# IN THE SUPREME COURT OF CALIFORNIA

In re GREGORY GADLIN

on Habeas Corpus.

S254599

Second Appellate District, Division Five
B289852

Los Angeles County Superior Court
BA165439

December 28, 2020

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Cuéllar, Kruger, Groban and Hill* concurred.

_____

\* Presiding Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re GADLIN

S254599

Opinion of the Court by Cantil-Sakauye, C. J.

In November 2016, the California electorate approved Proposition 57, the Public Safety and Rehabilitation Act of 2016. The initiative amended the California Constitution to provide, in relevant part, that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1) (article I, section 32(a)(1)).)[1] The initiative also directed the Department of Corrections and Rehabilitation (the Department) to "adopt regulations in furtherance of these provisions" and instructed the Secretary of the Department to "certify that these regulations protect and enhance public safety." (Art. I, § 32, subd. (b) (article I, section 32(b)).)

The Department adopted regulations implementing a nonviolent offender parole consideration process. Those regulations exclude from nonviolent offender parole consideration any inmate who "is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in Sections 290 through 290.024 of the Penal Code." (Cal. Code

---

[1] Further article references are to the California Constitution unless otherwise indicated.

Regs., tit. 15, § 3491, subd. (b)(3) [governing determinately sentenced offenders]; see also *id.*, § 3496, subd. (b) [governing indeterminately sentenced offenders].)[2] We granted review to address the validity of these provisions.

The Department asserts it is authorized by article I, section 32(b) to exclude from nonviolent offender parole consideration all inmates convicted of a registerable sex offense, regardless of whether that offense is defined by the regulations as a nonviolent felony and regardless of whether the inmate is currently incarcerated for that conviction. Indeed, the Department's regulations categorize inmates convicted of a registerable sex offense as "nonviolent offenders" unless, among other criteria, they are currently incarcerated for a violent felony listed in Penal Code section 667.5, subdivision (c). (Cal. Code Regs., §§ 3490, subd. (a), 3491, subds. (a), (b), 3495, subd. (a), 3496, subds. (a), (b).) Nonetheless, the regulations entirely exclude from nonviolent offender parole consideration inmates previously convicted or currently convicted of any registerable sex offense. We conclude that this categorical exclusion conflicts with the constitutional directive that inmates "convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration." (Art. I, § 32(a)(1).)

We emphasize that this determination does not require the release on parole of any inmate. The evaluation of an inmate's suitability for parole and the processes involved in conducting that evaluation remain squarely within the purview of the Department and the Board of Parole Hearings. We

---

[2] Further undesignated references to the California Code of Regulations are to title 15 unless otherwise noted.

emphasize, too, that our conclusion here does not disturb the Department's exclusion from parole consideration of inmates currently incarcerated for violent felony sex offenses as defined in Penal Code section 667.5, subdivision (c). The Department is not permitted, however, to entirely exclude from parole consideration an entire class of inmates when those inmates have been convicted of nonviolent felony offenses.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Underlying Conviction

In 2007, a jury convicted petitioner Gregory Gadlin of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[3] The jury sustained allegations that he had previously been convicted of two serious felonies (Pen. Code, § 667, subd. (a)(1)): a 1984 conviction for forcible rape (*id.*, § 261, former subd. (2)), and a 1986 conviction for forcible child molestation (*id.*, § 288, subd. (b)). Both prior convictions require registration under the Sex Offender Registration Act. (Pen. Code, § 290, subd. (c).)

Following his conviction in 2007, petitioner was sentenced to a total prison term of 35 years to life, consisting of 25 years to life for assault with a deadly weapon under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12), and an

---

[3] As discussed below, the Department's regulations implementing Proposition 57 adopt the definition of "violent felony" established in Penal Code section 667.5, subdivision (c). (Cal. Code Regs., §§ 3490, subd. (c), 3495, subd. (c).) Petitioner's current conviction for assault with a deadly weapon is not a violent felony under that statute. The parties do not discuss, and we do not consider, the validity of the Department's regulations concerning the adoption of the Penal Code on this point.

additional five years for each of his two prior serious felony convictions. His judgment was affirmed on appeal.

### B. The Underlying Habeas Corpus Petitions and the Court of Appeal Opinion

After the electorate approved Proposition 57, petitioner filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court. The petition challenged the Department's determination that petitioner did not qualify for nonviolent offender parole consideration, and specifically challenged the provision of the regulations excluding from nonviolent offender parole consideration inmates like petitioner who had been convicted under the Three Strikes law. The trial court denied the petition, finding that the then-applicable regulations properly excluded inmates serving third strike sentences from eligibility for nonviolent offender parole consideration. It does not appear that either petitioner or the Department addressed in the superior court proceedings the effect of defendant's prior sex offense convictions on his eligibility for nonviolent offender parole consideration.

Petitioner sought habeas corpus relief in the Court of Appeal. That court appointed counsel, directed counsel to file an amended petition, and eventually issued an order to show cause. In its return to the order to show cause, the Department asserted that petitioner was ineligible for nonviolent offender parole consideration for two reasons: first, because he was serving an indeterminate term pursuant to the Three Strikes law; second, because he had suffered a prior conviction for a sex

offense requiring registration under Penal Code section 290. The Department's first argument is not before us.[4]

The appellate court held that the amended regulations improperly excluded petitioner from nonviolent offender parole consideration based on his two prior sex offense convictions. (*Gadlin*, *supra*, 31 Cal.App.5th at pp. 789–790.) Looking to the language of the constitutional provision, the court determined that "[t]he reference to 'convicted' and 'sentenced' [in article I, section 32(a)(1)], in conjunction with present eligibility for parole once a full term is completed, make[s] clear that early parole eligibility must be assessed based on the conviction for which an inmate is now serving a state prison sentence (the current offense), rather than prior criminal history." (*Id.* at p. 789.) The court rejected the Department's assertion that the Department could exclude offenders with prior sex offense convictions in order to protect public safety, noting that "[t]hese policy considerations . . . do not trump the plain text of section 32[(a)(1)]." (*Ibid.*) The court declined to express any opinion

---

[4]    When the present matter was pending in the Court of Appeal, that same court decided *In re Edwards* (2018) 26 Cal.App.5th 1181 (*Edwards*). *Edwards* held that the regulations implementing Proposition 57 improperly excluded from nonviolent offender parole consideration third strike offenders whose third strike was for a nonviolent offense. (*Edwards*, at pp. 1185–1186.) The court directed the Department to amend the regulations accordingly, and the Department did so in December 2018. (*Id.* at pp. 1192–1193.) The Court of Appeal in the present case concluded that the amended regulations effectively mooted the Department's argument that petitioner's conviction under the Three Strikes law made him ineligible for nonviolent offender parole consideration. (*In re Gadlin* (2019) 31 Cal.App.5th 784, 787 (*Gadlin*).)

concerning whether the exclusion of inmates based on a current conviction for a nonviolent sex offense also violates the Constitution. (*Ibid*.) The Court of Appeal granted the petition and ordered the Department to consider petitioner for parole within 60 days. (*Id.* at p. 790.)

Justice Baker authored a concurring opinion agreeing with the majority that individuals convicted of prior sex offenses may not be excluded from nonviolent offender parole consideration under the newly enacted constitutional provision. (*Gadlin*, *supra*, 31 Cal.App.5th at p. 790 (conc. opn. of Baker, J.).) The concurring opinion, however, maintained that individuals currently incarcerated for nonviolent sex offenses may properly be excluded from nonviolent offender parole consideration. (*Id.* at pp. 793–796 (conc. opn. of Baker, J.).)

We granted the Attorney General's petition for review and directed the parties to address whether the Department had the authority to exclude from nonviolent offender parole consideration inmates with prior sex offense convictions requiring registration. Following oral argument, we asked the parties to submit supplemental briefs addressing whether the Department had the authority to exclude from nonviolent offender parole consideration those inmates with current nonviolent sex offense convictions (that is, convictions not listed as violent in Penal Code section 667.5, subdivision (c)) that require registration.[5] Although petitioner was excluded from

---

[5] The Court of Appeal recently considered this issue and concluded that the Department could not exclude inmates currently convicted of a nonviolent registerable sex offense. (*Alliance for Constitutional Sex Offense Laws v. Department of Corrections & Rehabilitation* (2020) 45 Cal.App.5th 225, 234

nonviolent offender parole consideration based solely on his prior conviction, in light of the concurring opinion below and the interest in resolving the matter expeditiously we will consider the Department's regulations as they apply to both prior and current convictions.

## II. DISCUSSION

### A. Proposition 57

In 2009, a three-judge federal district court panel ordered the Department "to reduce the prisoner population to 137.5% of the adult institution's total design capacity." (*Coleman v. Schwarzenegger* (E.D.Cal. 2009) 922 F.Supp.2d 882, 962; see also *Brown v. Plata* (2011) 563 U.S. 493, 501–503.) The California Legislature and electorate subsequently enacted several measures aimed to reduce the prison population, including Assembly Bill No. 109 (Stats. 2011, ch. 15, § 482 (2011–2012 Reg. Sess.); criminal realignment) and Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000). Still, the issue persisted and in February 2014 the federal district court ordered the Department to implement additional measures.

Against this backdrop, in November 2016 the electorate approved Proposition 57. (Cal. Sect. of State, Statement of Vote Summary Pages (2016) p. 12 <https://elections.cdn.sos.ca.gov/sov/2016-general/sov/06-sov-summary.pdf> [as of Dec. 17,

---

(*Alliance*).) Counsel in the present matter is the same counsel as appeared in *Alliance*. We granted review in *Alliance* and deferred briefing pending resolution of the matter before us.

2020].)[6]  As relevant here, the initiative added section 32 to article I of the California Constitution.  The new section states: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."  (Art. I, § 32(a)(1).)  It further provides that "the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence."  (*Id.*, § 32(a)(1)(A).)  Finally, as noted earlier, the new provision directs the Department to "adopt regulations in furtherance of these provisions" and instructs the Secretary of the Department to "certify that these regulations protect and enhance public safety."  (*Id.*, § 32(b).)

Article I, section 32(a) identifies the purposes behind the constitutional provision, stating that it was "enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law."  Uncodified portions of Proposition 57 further identify the initiative's purpose and intent.  Those purposes, in relevant part, are:  "1.  Protect and enhance public safety.  [¶]  2.  Save money by reducing wasteful spending on prisons.  [¶]  3.  Prevent federal courts from indiscriminately releasing prisoners.  [¶]  4.  Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)  The initiative also states that the

---

**6**    All Internet citations in this opinion are archived by year, docket number, and case name at <http://courts.ca.gov/ 38324.htm>.

"act shall be liberally construed to effectuate its purposes." (*Id.*, § 9, p. 146.)

## B. The Department's Regulations

In March 2017, the Department proposed emergency regulations to implement Proposition 57. Those regulations, which were adopted on a temporary basis, defined a "nonviolent offender" as an inmate who was *not*, among other things, serving a term for a violent felony as defined in Penal Code section 667.5, subdivision (c) or convicted of a sex offense requiring registration under Penal Code section 290. (Cal. Code Regs., §§ 3490, former subds. (a), (c), 2449.1, former subds. (a), (c).) Under the emergency regulations, inmates with current or prior sex offense convictions requiring registration were excluded from nonviolent offender parole consideration.

In May 2018, the Department issued final regulations to replace the March 2017 emergency regulations. The May 2018 regulations modified the March 2017 emergency regulations in various ways, including by changing the definition of "nonviolent offenders." As relevant here, the final regulations do not exclude from the definition of "nonviolent offenders" individuals convicted of a current or prior sex offense requiring registration. (See Cal. Code Regs., §§ 3490, subd. (a) [defining "determinately-sentenced nonviolent offender"], 3495, subd. (a) [defining "indeterminately-sentenced nonviolent offender"].) Thus, inmates with prior sex offenses requiring registration may be deemed "nonviolent offenders" under the final regulations (unless they are excluded on another basis). The regulations state, too, that nonviolent offenders "shall be eligible for parole consideration by the Board of Parole Hearings." (*Id.*, § 3491, subd. (a); see also § 3496, subd. (a).)

The final regulations go on to say that, "[n]otwithstanding [section 3491,] subsection (a)," even nonviolent offenders are "not eligible for parole consideration" if, among other things, "[t]he inmate is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in Sections 290 through 290.024 of the Penal Code." (Cal. Code Regs., § 3491, subd. (b), (b)(3); see also § 3496, subd. (b).)[7]

The final statement of reasons accompanying the May 2018 regulations acknowledged that individuals convicted of a sex offense "are no longer excluded from the definition of 'nonviolent offender.' " (Dept. of Corrections and Rehabilitation, Credit Earning and Parole Consideration Final Statement of Reasons (2018) p. 14.) It went on to explain that, notwithstanding that definition, inmates currently or previously convicted of a sex offense requiring registration would be excluded from nonviolent offender parole consideration based on public safety concerns. (*Id.* at pp. 14, 20.)[8] The statement asserted that such offenders pose a "potentially high

---

[7] The regulations detail the eligibility criteria for both determinately sentenced offenders (see Cal. Code Regs., §§ 3490–3491) and indeterminately sentenced offenders (see *id.*, §§ 3495–3496). The provisions are identical as relevant here; both exclude from nonviolent offender parole consideration an inmate convicted of a sexual offense that currently requires or will require registration. (*Id.*, §§ 3491, subd. (b)(3), 3496, subd. (b).)

[8] The risk to the community posed by individuals convicted of sex offenses is sharply contested by the parties and amici. Given our conclusions regarding the language of the Constitution and the intent of the voters as reflected in the ballot materials, however, we need not address this issue.

risk of committing further sex offenses after release from incarceration or commitment, and that protection of the public from reoffending by these offenders is a paramount public interest." (*Id.* at p. 20.)[9]

## C. Other Cases Regarding Nonviolent Offender Parole Consideration

In addition to excluding from parole consideration inmates convicted of prior offenses requiring registration, the May 2018 regulations categorically excluded certain other "nonviolent offenders": (i) inmates deemed ineligible based on a public safety screening and referral, and, as noted, (ii) inmates serving an indeterminate term under the Three Strikes law, even when the third strike was a nonviolent felony. Courts of Appeal have invalidated both exclusions as inconsistent with Proposition 57 and have directed the Department to adopt new regulations consistent with the constitutional provision. (See *In re McGhee* (2019) 34 Cal.App.5th 902 (*McGhee*); *Edwards*, *supra*,

---

[9] The final statement of reasons accompanying the regulations also provided estimates concerning the number of inmates who would be affected by this exclusion. According to the Department, approximately 22,400 inmates were required at that time to register for a sex offense based on a current or prior conviction. Of those, more than 18,000 were currently convicted of a violent offense as defined in Penal Code section 667.5, subdivision (c) and thus, under the Department's regulations, were ineligible for nonviolent offender parole consideration based on their current conviction in any event. Of the remaining 4,400 or so inmates convicted of a nonviolent offense (and currently incarcerated based on that offense), it is not clear how many would be excluded from nonviolent offender parole consideration based on a prior (as opposed to a current) sex offense conviction.

26 Cal.App.5th at p. 1181.) The Department did not seek review in either case.[10]

### D. Standard of Review and Principles of Statutory Interpretation

The principles applicable to determining the validity of regulations promulgated by a state agency are well settled. Those precepts have traditionally been applied in the context of a state agency's regulations addressing statutes enacted by the Legislature. (See *Morris v. Williams* (1967) 67 Cal.2d 733, 748 (*Morris*).) Neither party argues that the relevant principles of interpretation differ when an agency has promulgated regulations to give force to a constitutional provision, rather than a statutory provision. The parties in this case have not suggested an alternative framework to interpret agency regulations authorized by constitutional provisions, and we see no reason to think a different framework would lead to a different result. Therefore, for purposes of this case we proceed as though the ordinary analytical approach applies. (Cf. *Samara v. Matar* (2018) 5 Cal.5th 322, 330.)

In evaluating the validity of a regulation under these principles, we first ask whether the regulation is " 'consistent and not in conflict with' " the provision that authorizes it. (*Morris*, *supra*, 67 Cal.2d at p. 748, italics omitted.) We then inquire whether the regulation is reasonably necessary to

---

[10] As noted, the Department amended its regulations following the decision in *Edwards*, and it did so again following the decision in *McGhee*. As amended, the operative language regarding the exclusion of individuals convicted of registerable sex offenses remains unchanged from the May 2018 version of the regulations. (See Cal. Code Regs., §§ 3490–3491, 3495–3496.)

effectuate the purpose of the authorizing law. (*Id.* at pp. 748–749; see also Gov. Code, § 11342.2 ["Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute"]; see also *Woods v. Superior Court* (1981) 28 Cal.3d 668, 679 (*Woods*).) Our task as a reviewing court " ' "is to decide whether the [agency] reasonably interpreted [its] mandate." ' " (*Woods*, *supra*, 28 Cal.3d at p. 679, quoting *Credit Ins. Gen. Agents Assn. v. Payne* (1976) 16 Cal.3d 651, 657.) We presume the validity of a regulation promulgated by a state agency. (*Assn. of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 389 (*Jones*).) The burden lies with the party challenging the regulation to show its invalidity. (*Payne*, *supra*, 16 Cal.3d at p. 657.) "Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise." (*Woods*, *supra*, 28 Cal.3d at p. 679.)

" 'Our function is to inquire into the legality of the regulations, not their wisdom.' " (*Woods*, *supra*, 28 Cal.3d at p. 679, quoting *Morris*, *supra*, 67 Cal.2d at p. 737.) Still, " ' "final responsibility for the interpretation of the law rests with the courts." [Citations.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' " (*Woods*, *supra*, 28 Cal.3d at p. 679, quoting *Morris*, *supra*, 67 Cal.2d at p. 748.)

To determine whether the regulation here is consistent with the constitutional provisions enacted by Proposition 57, we must interpret the constitutional provisions themselves. Our "primary concern" in construing a constitutional provision enacted through voter initiative is "giving effect to the intended purpose of the provisions at issue." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933.) And, "[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction." (*People v. Rizo* (2000) 22 Cal.4th 681, 685, citing *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) In doing so, we look to the text of the constitutional provision at issue and, as appropriate, extrinsic sources such as an initiative's ballot materials. (See *City of Upland, supra*, 3 Cal.5th at pp. 933–934.)

### E. The Language of Proposition 57

We therefore begin our analysis by returning to the language of the constitutional provisions enacted by Proposition 57. As noted above, article I, section 32(a)(1) states: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." Article I, section 32(b) provides that the Department shall "adopt regulations in furtherance of these provisions." The question here is whether these provisions indicate that the voters intended to permit the Department to exclude an inmate from nonviolent offender parole consideration based on a conviction for a registerable sex offense. In deciding that question, we consider whether that prohibition may apply, not only with respect to prior sex offense convictions but also with respect to current sex offense convictions.

The Court of Appeal concluded that the Department could not exclude inmates from nonviolent offender parole consideration based on prior convictions: "The reference to 'convicted' and 'sentenced,' in conjunction with present eligibility for parole once a full term is completed, make clear that early parole eligibility must be assessed based on the conviction for which an inmate is now serving a state prison sentence (the current offense), rather than prior criminal history. This interpretation is supported by section 32[(a)(1)]'s use of the singular form in 'felony offense,' 'primary offense,' and 'term.'" (*Gadlin, supra*, 31 Cal.App.5th at p. 789.) Petitioner agrees and asserts there is no "suggestion in the text of the initiative that the electorate had any concern about prior convictions at the qualification stage: the focus was exclusively on those offenders serving a term for a nonviolent offense, regardless of their criminal history."

As to inmates currently convicted of an offense requiring registration, petitioner again emphasizes the language of the constitutional provision. He notes that article I, section 32(a)(1) provides for parole consideration for inmates convicted of nonviolent felony offenses and that the Department's exclusion of inmates convicted of any sex offense requiring registration — including nonviolent felony offenses — is not based on a conclusion that these inmates have committed "violent offenses" as defined in Penal Code section 667.5, subdivision (c), but on the Department's assertion that such an exclusion is required by public safety considerations.

The Department does not assert that the text of article I, section 32(a)(1) expressly demonstrates the intent of the electorate to exclude inmates from nonviolent offender parole consideration based on a prior conviction or a current conviction

for any registerable offense. The Department contends, however, that the language of article I, section 32(a)(1) is ambiguous, and that the Department appropriately exercised its authority to " ' " 'fill up the details' " ' " of article I, section 32's parole scheme. (*Jones, supra*, 2 Cal.5th at p. 391.) Thus, the Department asserts, an analysis of the ballot materials is appropriate in order to determine the voters' intent.

In so arguing, the Department focuses on the terms "convicted" and "nonviolent felony offense." The Department asserts that "nonviolent" as used in the provision "lacks a firm definition," noting that the voter information guide informed voters that "the measure and current law do not specify which felony crimes are defined as nonviolent . . . ." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56.) We consider the alleged ambiguity of each of those terms before turning to the language of the constitutional provision as a whole.

### 1. *"Nonviolent felony offense"*

The term "nonviolent felony offense" is not defined in the constitutional language. Article I, section 32(b) delegates the Department authority to promulgate regulations in furtherance of the constitutional language. That authority may include some discretion to define what constitutes a "nonviolent felony offense" for purposes of nonviolent offender parole consideration. We need not decide the full scope of the Department's authority in this context, however, given the limited question before us. Rather, our task is to determine whether the Department's current regulations, which categorically exclude from nonviolent offender parole consideration all inmates subject to sex offender registration,

are consistent with the constitutional directive that "[a]ny person convicted of a nonviolent felony offense . . . shall be eligible for parole consideration . . . ." (Art. I, § 32(a)(1).)

In its initial briefing before this court, the Department conceded that its regulations defined petitioner as a "nonviolent offender" based on his current conviction. The Department noted that the regulation at issue "does not merely interpret particular terms, such as 'nonviolent' or 'nonviolent felony offense.' Instead, it reflects the Secretary's public safety determinations . . . ."[11]

In an abrupt change of position, however, the Department asserts in its supplemental briefing that its regulations excluding inmates with registerable sex offenses from parole consideration "in effect deem those offenses not to be 'nonviolent felony offense[s]' under section 32, subdivision (a)(1)." That is, the Department now asserts that any inmate excluded from nonviolent offender parole consideration under its regulations has been excluded based on an implicit determination that the inmate did not commit a "nonviolent felony offense" for purposes of article I, section 32(a)(1). We have previously declined to consider belated arguments not raised in a party's opening brief. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) Even

---

[11] The Department likewise asserted in *Alliance* that its exclusion from parole consideration of inmates with current convictions for nonviolent registerable sex offenses was based only on public safety concerns. (*Alliance, supra,* 45 Cal.App.5th at p. 231 ["the Department does *not* argue that all sex offenses requiring registration under Penal Code section 290 are excluded from the term 'nonviolent felony offense' for purposes of California Constitution, article I, section 32, subdivision (a)(1)"].)

considering the Department's new argument, we find it to be inconsistent with the Department's regulations.

Article I, section 32(a) refers to parole consideration for individuals "convicted of a nonviolent felony offense." The regulations do not interpret this phrase, but they do provide definitions of "nonviolent offender" and "violent felony." (Cal. Code Regs., §§ 3490, subds. (a), (c), 3495, subds. (a), (c).) An inmate is deemed a "nonviolent offender" if he or she does not meet any of the listed criteria, including that the inmate is "currently serving a term of incarceration for a 'violent felony.' " (*Id.*, § 3490, subd. (a)(5); see also *id.*, § 3495, subd. (a)(3).) The regulations define a "violent felony" as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code." (*Id.*, § 3490, subd. (c); see also *id.*, § 3495, subd. (c).) The Department now asserts that a "nonviolent felony offense" is "not simply any offense that is not among the violent felonies listed" in the Penal Code, but that under the regulations "all inmates not excluded by [the regulatory] criteria are considered 'convicted of a nonviolent felony offense' and eligible for participation in the nonviolent parole program."

The regulations do not support the Department's position. Although the regulations do not define what constitutes a "nonviolent felony," the adoption of a definition for what constitutes a "violent felony" indicates that offenses not defined as "violent" would amount to "nonviolent felonies." This not only makes intuitive sense, but also is supported by the structure of the regulations.

The regulations refer to "nonviolent felony offense[s]" (Cal. Code Regs., § 3490, subd. (a)(6)) and offenses that are "not a 'violent felony' " (*id.*, § 3490, subd. (b)). In defining the term

18

"nonviolent offender," for example, the regulations exclude from that term an inmate "currently serving a term of incarceration *for a nonviolent felony offense* after completing a concurrent determinate term for a 'violent felony.'" (*Id.*, § 3490, subd. (a)(6), italics added; see also *id.*, §§ 2449.1, subd. (a)(6), 2449.30, subd. (a)(5), 3495, subd. (a)(5).) In this context, it is clear that a "nonviolent felony offense" stands in contrast to a "violent felony."

Other portions of the regulations make the same distinction. They note that the term "nonviolent offender" "includes an inmate who has completed a determinate or indeterminate term of incarceration and is currently serving a determinate term for an in-prison offense that is *not a 'violent felony.'*" (Cal. Code Regs., § 3490, subd. (b), italics added; see also *id.*, §§ 2449.1, subd. (b), 2449.30, subd. (b), 3495, subd. (b).) Similarly, the regulations direct the Department to review each inmate's eligibility for nonviolent offender parole consideration. (*Id.*, § 3491.) The Department conducts a new eligibility review, in relevant part, "when an inmate begins serving a determinate term for an in-prison offense that is *not a violent felony*." (*Id.*, § 3491, subd. (d), italics added; see also §§ 3496, subd. (e)(2)(A), (B).) The regulations, then, effectively define the term "nonviolent felony offense" not by implicitly prescribing the scope of those inmates ultimately deemed eligible for parole consideration, but by contrasting that term with the definition of "violent felony" as adopted by the Department.

Further, the regulations exclude from nonviolent offender parole consideration another class of inmates defined by the regulations as "nonviolent offenders" — inmates eligible for a parole consideration hearing under Penal Code section 3051 or section 3055 within one year, or whose initial parole

consideration hearing under those provisions has already been scheduled. (Cal. Code Regs., § 3491, subd. (b)(2).) Applying the Department's new assertion to that context, the exclusion of these inmates would reflect the Department's determination that they have not been convicted of a "nonviolent felony offense." But the assertion does not pass muster; although we are not considering the validity of this regulatory provision, we perceive no tenable argument that an exclusion based on the timing of a parole hearing in turn reflects a determination regarding the nature of the inmate's underlying offense as violent or nonviolent.

Finally, the regulations do not include registerable sex offenses within the definition of what constitutes a "violent felony," nor do the regulations explicitly state that such offenses are excluded from the definition of a "nonviolent felony." Although the Department now asserts the regulations effectively exclude registerable sex offenses from the category of "nonviolent felony offenses," the regulations at issue plainly are not focused on nonviolent *felony* offenses — they exclude from parole consideration an inmate convicted of any registerable sex offense, felony or misdemeanor. (Cal. Code Regs., §§ 3491, subd. (b)(3), 3496, subd. (b); see, e.g., Pen. Code, §§ 290, subd. (c) [listing offenses requiring registration, including possession of child pornography and indecent exposure], 311.11 [criminalizing possession of child pornography as a misdemeanor or felony]; 314 [criminalizing indecent exposure as misdemeanor in some cases].)

In short, the regulations do not exclude inmates with registerable sex offenses from parole consideration based on a determination that those inmates have not been convicted of nonviolent felonies. Rather, the regulations categorize

otherwise eligible inmates with registerable sex offenses as "nonviolent offender[s]" who are nonetheless excluded from parole consideration. (Cal. Code Regs., §§ 3491, subds. (a), (b)(3), 3496, subds. (a), (b).) The structure of the Department's regulations therefore contradicts the Department's newly asserted position. The regulations indicate the Department's exclusion of registerable sex offenses is not based on an interpretation of what offenses are considered "nonviolent," but is based on a public safety determination that requires the Department to carve out exceptions to parole consideration within the class of inmates it has determined to be "nonviolent offender[s]."[12]

---

[12] The Department also relies on the final statement of reasons accompanying its regulations (see *ante*, fn. 9) for the assertion that inmates convicted of registerable sex offenses were excluded from the parole scheme based on a determination that those felonies were not nonviolent. The final statement of reasons, however, indicates otherwise. The Department emphasizes that the final statement of reasons essentially stated that the Department had determined registerable sex offenses did not constitute nonviolent felony offenses, pointing to the language, "these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration." Elsewhere, however, the final statement of reasons notes that "Public safety requires that sex offenders be excluded from nonviolent parole consideration." Nowhere does the final statement of reasons provide that registerable sex offenses are not considered "nonviolent felony offenses."

Further, to the extent the final statement of reasons supports the Department's newly raised position, it is inconsistent with the structure of the regulations the Department ultimately adopted, as discussed above.

### 2. *"Convicted"*

The Department asserts that the term "convicted" " 'conveys no self-evident meaning,' " quoting *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 (*Woodhead*). In that case, we considered a Welfare and Institutions Code provision stating that " '[n]o person convicted of . . . any . . . serious felony . . . committed when he or she was 18 years of age or older shall be committed to Youth Authority.' " (*Id.* at p. 1006, quoting Welf. & Inst. Code, former § 1732.5.) The Youth Authority in *Woodhead* had rejected such a commitment for the defendant because, although his current conviction was not for a serious felony, he had previously been convicted of a serious felony. (*Woodhead, supra,* 43 Cal.3d at p. 1006.) We held this was improper, and that the term as used in the relevant code section meant "*currently* convicted." (*Id.* at p. 1010.) In doing so, however, we noted that the term "convicted" "may have different meanings in different contexts, or even different meanings within a single statute." (*Id.* at p. 1008, citing *People v. Valentine* (1986) 42 Cal.3d 170, 177, fn. 2.) Thus, we looked to extrinsic sources to determine its meaning in that case. (*Woodhead, supra,* 43 Cal.3d at p. 1008.)

The Department does not assert that the term "convicted" as used in the amended constitutional provisions means "ever convicted" or otherwise evinces an intent to exclude inmates from nonviolent offender parole consideration based on a prior conviction. Nor can we conclude that the term is ambiguous in this context. As the Court of Appeal explained, the language of article I, section 32(a)(1) indicates the voters intended that nonviolent offender parole consideration would be premised on the inmate's current conviction alone. The use of the terms "convicted" and "sentenced," viewed in context with the

provision that the inmate would be eligible for parole consideration "after completing the full term for his or her primary offense," make this clear. (Art. I, § 32(a)(1).) Parole eligibility under the provision is conditioned on an inmate's current conviction for a nonviolent felony, the inmate's being sentenced to prison, and the inmate's completion of the "full term" for the "primary offense." (*Ibid.*) None of those terms indicate any intent to consider prior convictions in determining nonviolent offender parole eligibility. Nor does the Department assert that the term "convicted" has any bearing on the eligibility of inmates currently convicted of nonviolent felony offenses requiring registration under Penal Code section 290.

### 3. *The language read as a whole*

We conclude, then, that article I, section 32(a)(1), although containing some terms that might be ambiguous in other respects, is not ambiguous concerning its scope regarding offenders who were previously convicted of a registerable sex offense or who are currently convicted of a registerable sex offense that the Department has itself defined as nonviolent. Under those regulations, these offenders have been convicted of a nonviolent felony offense and article I, section 32(a)(1) directs that they "shall be eligible for parole consideration."

Still, the Department asserts that the alleged general ambiguity of those terms allows it to provide exceptions to the general rule that such offenders "shall be eligible for parole consideration." (Art. I, § 32(a)(1).) That is, even when it is not contested that an inmate is "convicted of a nonviolent felony offense and sentenced to state prison" (*ibid.*), the Department asserts it retains discretion to carve out exclusions barring otherwise eligible inmates from parole consideration —

notwithstanding the constitutional language stating that "[a]ny" such inmates "shall be eligible for parole consideration" (*ibid.*).

In support of that position, the Department points to the directive in article I, section 32(b) specifying that it "shall adopt regulations in furtherance of these provisions," and that the Secretary of the Department "shall certify that these regulations protect and enhance public safety." According to the Department, this language "signaled to voters that the Department would continue to have an important role in shaping the implementation of the nonviolent parole consideration process," and that "the Proposition's text is not itself the whole of the nonviolent parole program, but only the framework for that program."

The Department's position is unpersuasive. Article I, section 32(b) directs the adoption of regulations "in furtherance of" the prior provisions of article I, section 32. Merriam-Webster's dictionary defines "furtherance" as "the act of furthering; ADVANCEMENT." (Merriam-Webster Dict. Online (2020) <https://www.merriam-webster.com/dictionary/furtherance> [as of Dec. 17, 2020].) And in its verb form, "further" is defined as "to help forward; PROMOTE." (Merriam-Webster Dict. Online, *supra*, <https://www.merriam-webster.com/dictionary/further> [as of Dec. 17, 2020].) The Department makes no argument, and we perceive none, that deeming ineligible for parole consideration all offenders within the class considered here — those with prior registerable convictions or current convictions for nonviolent offenses requiring registration — would further the intent of the constitutional provision declaring inmates convicted of nonviolent felonies to be eligible for parole consideration.

24

The Department's reliance on the requirement that the Secretary certify that the regulations "protect and enhance public safety" is similarly unpersuasive. Indeed, the Secretary must so certify. (Art. I, § 32(b).) But this requirement does not authorize the Department to promulgate regulations that are in conflict with the constitutional provisions. To conclude otherwise would eviscerate the language of article I, section 32(a)(1) mandating that inmates convicted of nonviolent felony offenses "shall be eligible" for parole consideration. Indeed, under the Department's interpretation the Secretary would be empowered to curtail parole eligibility based on any criteria so long as the Secretary asserted those restrictions protected public safety. Such an approach would be untenable, violating the directive that regulations must be " 'consistent and not in conflict with' " an authorizing constitutional provision. (*Morris*, *supra*, 67 Cal.2d at p. 748, italics omitted.)

This is not to suggest that the Department lacks any meaningful power to promulgate regulations pursuant to article I, section 32(b). The Department is empowered to adopt regulations consistent with the constitutional provisions and the purpose of article I, section 32. As relevant here, the adopted regulations must constitute a reasonable interpretation of the requirement in article I, section 32(a)(1) that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." The regulations also must evidence some connection with the mandate to "protect and enhance public safety." (Art. I, § 32(b).)

Nor can it be said that the initiative's overall focus on public safety is sufficient to grant the Department the broad authority it claims. A conclusion that the electorate made

25

certain inmates *eligible* for parole consideration does not require the Department to find each of those inmates *suitable* for parole. Indeed, many factors relevant to public safety may best be addressed through parole suitability determinations. The Department is left with ample room to protect public safety by crafting the specific processes under which parole suitability is determined on a case-by-case basis. And it has done so; the regulations direct the Board of Parole Hearings to consider "all relevant and reliable information" (Cal. Code Regs., § 2449.4, subd. (b)) to determine whether the inmate poses a "current, unreasonable risk of violence or a current, unreasonable risk of significant criminal activity" (*id.*, subd. (c)), including an inmate's "documented criminal history" (*id.*, subd. (b)(1)).

As noted earlier, the Department also contends the voters would have understood from the constitutional provision directing the Department to adopt regulations in furtherance of the initiative that the measure provided only a "framework" for nonviolent offender parole consideration, and that the Department would "fill up the details" — again, notwithstanding the constitutional directive that inmates who fall under article I, section 32(a)(1) "shall be eligible for parole consideration."

In support of this proposition, the Department relies on *Jones, supra,* 2 Cal.5th 376. There we considered the validity of a regulation enacted by the Insurance Commissioner. (*Id.* at p. 382.) The underlying statute directed the Commissioner to " 'promulgate reasonable rules and regulations . . . as are necessary to administer' " the Unfair Insurance Practices Act. (*Jones, supra,* 2 Cal.5th at p. 382, quoting Ins. Code, § 790.10.) Included in the act was a prohibition on making or disseminating any "untrue, deceptive, or misleading statements

with respect to the business of insurance." (*Jones*, *supra*, 2 Cal.5th at pp. 390–391.) The Commissioner's regulation, in turn, specified how insurance company estimates concerning the cost to rebuild or replace a home were calculated and communicated, and barred insurance companies from communicating a replacement cost estimate that did not comply with the regulation. (*Id*. at p. 385.) The plaintiffs sought declaratory relief, asserting that the Commissioner had exceeded the authority given under the act by defining a new unfair and deceptive insurance practice. (*Id*. at p. 388.)

We disagreed, noting that the act vested broad power in the Commissioner to promulgate regulations "necessary to administer" the act. (*Jones*, *supra*, 2 Cal.5th at p. 391.) We held that the Commissioner's authority to administer the act included promulgating rules "applying to a specific kind of statement prohibited under" the act. (*Id*. at p. 392.) Thus, we held it was well within the Commissioner's power to promulgate regulations implementing and interpreting the act's prohibition on unfair and deceptive insurance practices by identifying a type of specific unfair and deceptive insurance practice and developing rules concerning that practice. (*Ibid*.)

*Jones* is readily distinguishable from this case. As we have described above, the Department's regulations do not interpret the arguably ambiguous terms of Proposition 57. And, as the Department initially conceded, its regulations do not purport to clarify which inmates are "convicted of a nonviolent felony offense." (Art. I, § 32(a)(1).) Rather, the Department asserts a power to create an exception not expressly or impliedly referred to in the constitutional provisions. Neither our analysis nor our holding in *Jones* authorizes such a departure from the electorate's command.

Instead, the framework described by the language of the constitutional provision establishes a parole consideration process for "[a]ny person convicted of a nonviolent felony offense." (Art. I, § 32(a)(1).) Although the Department asserts its regulations merely fill up the details of that provision, carving out wholesale exclusions from an otherwise broad mandate "is hardly a detail." (*McGhee*, *supra*, 34 Cal.App.5th at p. 911.) Had the drafters of Proposition 57, and by extension the voters, intended to exclude inmates from nonviolent offender parole consideration based on prior or current sex offense convictions, it would have been a simple matter to say so explicitly. (See, e.g., Pen. Code, §§ 1170.18, subd. (i) [statutory provision enacted by Prop. 47 "does not apply to a person who has one or more prior convictions . . . for an offense requiring registration pursuant to subdivision (c) of Section 290"]; 1170.12, subd. (c)(2)(C)(ii) [statutory provision enacted by Prop. 36 excludes offenders whose "current offense is a felony sex offense . . . that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290"]; 2933.05, subd. (e)(3) [statute enacted by Legislature excludes from custody credit provision "[a]ny person required to register as a sex offender"].) As it stands, the initiative's language provides no indication that the voters intended to allow the Department to create a wholesale exclusion from parole consideration based on an inmate's sex offense convictions when the inmate was convicted of a nonviolent felony. We decline to create one ourselves.[13]

---

[13] Every Court of Appeal to have considered the issue has agreed with our conclusion that the Department's regulations excluding inmates from nonviolent parole consideration based

## F. Consideration of the Ballot Materials

When the constitutional text "is unambiguous and provides a clear answer, we need go no further." (See *Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.) Consideration of the ballot materials, however, only buttresses our reading of the constitutional text in this case. (See *Scher v. Burke* (2017) 3 Cal.5th 136, 149 [legislative history and historical circumstances may buttress reading of a statute and are entitled to "some weight," but are "by no means dispositive"].)

### 1. *The ballot materials presented to the voters*

The ballot materials presented to the voters consisted of three sections: the official title and summary prepared by the Attorney General, the analysis of the Legislative Analyst, and the arguments in favor of and against the proposition (an argument in favor by the proponents followed by a rebuttal by the opponents, and an argument against by the opponents followed by a rebuttal by the proponents).

The official title and summary described the parole provisions of Proposition 57 as follows: "Allows parole consideration for persons convicted of nonviolent felonies, upon completion of prison term for their primary offense as defined. [¶] . . . Requires Department of Corrections and Rehabilitation to adopt regulations to implement new parole and sentence credit provisions and certify they enhance public safety." (Voter

---

on prior offenses are contrary to the constitutional language enacted by Proposition 57. (See *In re King* (2020) 54 Cal.App.5th 814; *In re Chavez* (2020) 51 Cal.App.5th 748, 756; *In re Schuster* (2019) 42 Cal.App.5th 943, 954–955.)

Information Guide, Gen. Elec., *supra*, Official Title and Summary, p. 54.)

The analysis by the Legislative Analyst provided a broad description of the then-existing sentencing and parole consideration scheme. Notably, the analysis described a parole process implemented by the Department following the February 2014 federal court order in *Coleman/Plata* known as nonviolent second strike offender parole.[14] The analysis stated: "Individuals who receive a determinate sentence do not need a parole consideration hearing to be released from prison at the end of their sentence. However, some of these individuals currently are eligible for parole consideration hearings before they have served their entire sentence. For example, certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 54.)

The analysis then described the changes to the parole system that would result from the passage of Proposition 57. It stated that the initiative "changes the State Constitution to make individuals who are convicted of 'nonviolent felony' offenses eligible for parole consideration after serving the full prison term for their primary offense." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst,

---

[14] The nonviolent second strike offender parole process provided parole eligibility for nonviolent, non-sex-registrant, second strike offenders who had served 50 percent of their sentence. (See *In re Ilasa* (2016) 3 Cal.App.5th 489, 495.)

p. 56.) The analysis noted that "[a]lthough the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent." (*Ibid*.) It also described the anticipated fiscal effects of the initiative "[b]ased on recent [Board of Parole Hearings] experience with parole consideration for certain nonviolent offenders," pursuant to the federal court order. (*Ibid*.) Finally, the analysis estimated that "the ongoing fiscal impact of this provision would likely be state savings in the tens of millions of dollars annually. These savings would be offset somewhat by additional costs for [the Board of Parole Hearings] to conduct more parole considerations." (*Ibid*.)

Ultimately, the arguments for and against the proposition were presented to the voters. The proponents first urged that the initiative would allow "parole consideration for people with non-violent convictions who complete the full prison term for their primary offense." (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58.) The proponents did not address whether individuals convicted of nonviolent sex offenses would be eligible, or whether prior convictions would impact an inmate's eligibility.

The opponents' rebuttal and argument against Proposition 57 asserted that the initiative would allow for parole consideration for those convicted of various "nonviolent" sex offenses, including rape of an unconscious victim and sex trafficking. (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58.) The opponents further asserted that inmates would be eligible for nonviolent offender parole consideration despite having suffered prior convictions, stating: "Those previously convicted of MURDER,

RAPE and CHILD MOLESTATION would be eligible for early parole" (*ibid.*), that "[Proposition] 57 permits the worst career criminals to be treated the same as first-time offenders" (*id.*, argument against Prop. 57, p. 59, italics omitted), and that "16,000 dangerous criminals, including those previously convicted of murder and rape, would be eligible for early release" (*ibid.*, italics omitted).

The proponents' rebuttal responded by saying the opponents "are wrong." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) The rebuttal stated that the initiative would not authorize parole for violent offenders, "as defined in Penal Code 667.5(c)." (*Ibid.*) Finally, the rebuttal stated that the initiative "[d]oes NOT and will not change the federal court order that excludes sex offenders, as defined in Penal Code 290, from parole." (*Ibid.*)

### 2. *The Department's argument*

The Department contends the ballot materials clearly indicate the voters' intent to exclude inmates with any registerable sex offense conviction (prior or current) from nonviolent offender parole consideration. The Department focuses on the back-and-forth in the arguments for and against the initiative, and primarily emphasizes the statement in the proponents' rebuttal that Proposition 57 "[d]oes NOT and will not change the federal court order that excludes sex offenders, as defined in Penal Code 290, from parole." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) According to the Department, this statement "unequivocally rebutted" the opponents' argument that any sex offender would be eligible for nonviolent offender parole consideration, regardless of whether the conviction was for a

current or prior offense. The Department also points to the proponents' assertion that the Secretary of the Department must certify the regulations implementing Proposition 57 "as protecting public safety." In light of these statements, the Department contends, "A reasonable voter thereby understood that the Secretary would ensure that the adopted regulations would exclude sex offenders from parole, just as the proponents indicated."

The Department further points to the Legislative Analyst's discussion of the federal court order in the ballot materials. As noted, the analysis informed the voters that "certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence" and identified that parole scheme as "one of several measures put in place by a federal court to reduce the state's prison population." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 54.) Based on these "repeated references to the federal court order," the Department asserts, the voters should be understood to have approved the initiative with the intent that individuals convicted of a registerable sex offense would be excluded from nonviolent offender parole consideration.

Finally, the Department emphasizes that the voters were considering arguments made in favor of the initiative by then-Governor Edmund G. Brown Jr., who was listed on the ballot materials as an author of the arguments in favor of the initiative and the rebuttal to the arguments against the initiative. The Department asserts that it "seems reasonable that voters would give special weight to the arguments and assurances of

government experts — here, of the Governor of the State of California."

### 3. Analysis

The question is whether the ballot materials indicate that voters intended to exclude certain inmates convicted of nonviolent felonies from nonviolent offender parole consideration — or intended to allow the Department to craft regulations that would exclude such inmates — including those previously or currently convicted of sex offenses requiring registration pursuant to Penal Code section 290. Considering the ballot materials as a whole, the language of the constitutional provision, and the ambiguous nature of the ballot arguments, we cannot conclude the voters intended to base eligibility for nonviolent offender parole consideration on any prior convictions an inmate may have suffered, or any current conviction for a nonviolent offense requiring registration as a sex offender.

The Department's focus on a single line in the proponents' rebuttal argument overlooks the context of the entire ballot materials provided to the voters. The language of the constitutional provision did not indicate to the voters that inmates' prior convictions would play a role in determining nonviolent offender parole eligibility. Nor did the Attorney General's official title and summary, the Legislative Analyst's analysis, or the proponents' initial argument in favor of Proposition 57 so indicate. If, as the Department asserts, the voters intended to carve out an entire category of offenders from nonviolent parole consideration based on prior criminal history, these sources likely would have mentioned as much. (See *People v. Valencia* (2017) 3 Cal.5th 347, 365–366.)

Even the arguments in the ballot materials are not as helpful to the Department's position as it contends. The opponents of the initiative pointed out that "career criminals" would be treated the same as first-time offenders under the initiative, and that inmates "previously convicted of murder and rape" would be eligible for early release. (Voter Information Guide, Gen. Elec., *supra*, argument against Prop. 57, p. 59, italics omitted.) The opponents' argument was thus clear: An inmate's prior convictions, regardless of their number or nature, would not be a disqualifying factor for nonviolent parole consideration purposes. That the voters approved Proposition 57 "despite these warnings" supports a conclusion that the voters intended to provide broad parole consideration for nonviolent offenders without regard for prior convictions. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 907 (*Robert L.*).)

It is true that the proponents stated broadly that the opponents' arguments were "wrong." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) But this cannot be taken as a blanket denial of each argument raised by the opponents, and the Department does not claim it is. Indeed, there are portions of the opponents' argument that the Department must concede were correct, including the characterization that individuals convicted of and currently serving sentences for nonviolent offenses (as defined in Pen. Code, § 667.5, subd. (c)) like assault with a deadly weapon would be eligible for nonviolent offender parole consideration, or that an individual with a prior violent felony conviction for murder would not be excluded from nonviolent offender parole consideration. The proponents' failure to respond directly to the opponents' clear assertion that individuals with prior sex

offenses or extensive criminal histories would be eligible for parole consideration under the initiative is another indication that the voters did not intend to exclude such inmates from the nonviolent offender parole process. (See *Robert L.*, *supra,* 30 Cal.4th at pp. 906–907.)

The Department's position is somewhat more persuasive with regard to the exclusion for inmates currently convicted of nonviolent registerable sex offenses. Plainly, there is tension between the language of the constitutional provision directing parole consideration for all inmates convicted of nonviolent felonies and the assertion in the ballot argument that "sex offenders" would be excluded from parole consideration. (Voter Information Guide, Gen. Elec., *supra,* rebuttal to argument against Prop. 57, p. 59.) And there is a clear conflict between the arguments from the proponents (asserting all sex offenders would be excluded) and the opponents (asserting that some sex offenders would not be excluded). But we do not resolve these tensions by relying solely on the ballot materials. Rather, we presume that the voters relied on the text of the measure. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 803; see also *Amwest Surety v. Wilson* (1995) 10 Cal.4th 1243, 1260–1261, citing *Wright v. Jordan* (1923) 192 Cal. 704, 713.)

The voters were explicitly warned in the margins of the voter guide that "Arguments printed on this page are the opinions of the authors, and have not been checked for accuracy by any official agency." (Voter Information Guide, Gen. Elec., *supra*, pp. 58–59.) Even assuming the ballot materials conveyed to the voters that any conviction for a registerable sex offense, current or prior, would exclude an inmate from parole consideration under the proposed initiative, this interpretation remains at odds with the language of the constitutional

provision before the voters, as we have already discussed. And nothing in the remaining ballot materials suggested that sex offender registration for a nonviolent felony (or for a misdemeanor) would exclude an inmate from parole consideration. We cannot say that a reasonable voter, after reviewing the ballot materials and the language of the proposed constitutional provision, would have believed that a single line reflecting the proponents' disputed opinion would overcome the language of the constitutional provision.

The Department's view is that because the then-existing nonviolent second strike offender parole process excluded inmates with a prior or current sex offense requiring registration, the voters would have understood that Proposition 57 would exclude those offenders as well. But there is no indication the voters would have understood that to be the case. As the Department acknowledges, the federal court order referenced in the ballot materials did not exclude inmates with sex offenses from parole consideration. Rather, it was the Department's *implementation* of the nonviolent second strike offender parole process that carved out that exception.

The Department contends that the other references in the ballot materials to the federal court order would have alerted voters that Proposition 57 would not alter the nonviolent second strike offender parole process established under that order. This argument, too, falls short. The only other reference to the federal court order in the ballot materials is contained in the analysis of the Legislative Analyst. That passage notes that under then-existing law, certain inmates sentenced to determinate terms for nonviolent offenses were eligible for parole, a measure "put in place by a federal court to reduce the state's prison population." (Voter Information Guide, Gen.

Elec., *supra*, analysis of Prop. 57 by Legis. Analyst, p. 54.) Even if it were clear to the voters that this referred to the same federal court order mentioned in the proponents' rebuttal argument, it does not assert that the then-existing parole scheme excluded inmates based on prior or current convictions for sex offenses.

The Department's assertion, then, is that the voters would have read the single oblique reference to the court order in the proponents' rebuttal and would have been familiar not only with that order but also with the administrative documents implementing that court order. Those implementing documents, however, were not before the voters. An assumption that voters understood the nuances of an administrative program the ballot materials referenced only vaguely and did not actually present would stretch beyond the breaking point our axiom that voters are generally aware of existing law. (See *Robert L.*, *supra*, 30 Cal.4th at p. 905 ["to the extent the Court of Appeal, in ascertaining the voters' intent, relied on evidence of the drafters' intent that was not presented to the voters, we decline to follow it"]). "[A] possible inference based on the ballot argument is an insufficient basis on which to ignore the unrestricted and unambiguous language of the measure itself. It would be a strained approach to constitutional analysis if we were to give more weight to a possible inference in an extrinsic source (a ballot argument) than to a clear statement in the Constitution itself." (*Delaney v. Superior Court*, *supra*, 50 Cal.3d at p. 803.)

Our analysis of the voters' intent does not change merely because the proponents of the initiative here included the Governor. The Department cites no authority for the proposition that the voters would credit the views of the Governor over those of the opponents, and we have found none.

On the contrary, our case law examining ballot materials to discern the voters' intent has considered arguments proffered by both opponents and proponents, and without regard for whether one party was an elected official.  (See, e.g., *Robert L.*, *supra*, 30 Cal.4th at pp. 906–907 [giving weight to opponents' arguments].)  In any event, as explained earlier, when an argument for or against a ballot measure conflicts with the measure's plain text, the text must govern the measure's interpretation.

The Department reprises yet again its arguments that the voters would have understood from the constitutional provision directing the Department to adopt regulations in furtherance of the initiative that the initiative provided only a "framework" for nonviolent offender parole consideration, that the Department would fill up the details, and that the focus on public safety considerations in the constitutional language and ballot materials would give the Department broad authority to determine what inmates would be eligible for parole consideration under the initiative.  These assertions are no more persuasive in the context of the ballot materials than they are in the context of reviewing the language of the constitutional provisions at issue.  Without language in the constitutional provision that expressed or strongly implied the authority of the Department to carry out such exclusions, we cannot say the voters intended such exclusions.  (*People v. Valencia*, *supra*, 3 Cal.5th at p. 364.)

## III.  CONCLUSION

The constitutional provision approved by the voters does not require the release of any inmate.  Whether an inmate is suitable for parole depends in part on that individual's prior criminal history and the nature of his or her current offense.  Thus, the Board of Parole Hearings may consider an inmate's prior or current sex offense convictions when evaluating the inmate's suitability for parole.  (Cal. Code Regs., §§ 2449.4, subd. (b)(1), 2449.5.)  The Department's regulations, however, treat all individuals with convictions for registerable sex offenses as categorically ineligible for parole, even when the Department's own regulations classify those inmates as having been convicted of a nonviolent felony.  In doing so, the Department denies even the mere possibility of parole to an entire category of "person[s] convicted of a nonviolent felony offense."  (Art. I, § 32(a)(1).)  This precondition to parole consideration is inconsistent with the Constitution as amended by Proposition 57.

We therefore hold that nonviolent offender parole eligibility must be based on an inmate's current conviction.  We further hold that an inmate may not be excluded from nonviolent offender parole consideration based on a current conviction for a registerable felony offense that the Department's regulations have defined as nonviolent.  The regulatory provisions at issue here are inconsistent with the language of article I, section 32(a)(1) and cannot stand.  We direct the Department to treat as void and repeal California Code of Regulations, section 3491, subdivision (b)(3), and section 3496, subdivision (b), and to make any further conforming changes necessary to render the regulations consistent with article I, section 32(a)(1) and this opinion.

The judgment of the Court of Appeal is affirmed.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**HILL, J.***

---

\*     Presiding Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Gadlin

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 31 Cal.App.5th 784
**Rehearing Granted**

_____

**Opinion No.** S254599
**Date Filed:**  December 28, 2020

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  William C. Ryan

_____

**Counsel:**

Michael Satris; Law Office of Janice M. Bellucci and Janice M. Bellucci, under appointments by the Supreme Court, for Petitioner Gregory Gadlin.

Law Office of Janice M. Bellucci and Janice M. Bellucci for Alliance for Constitutional Sex Offense Laws, Inc., as Amicus Curiae on behalf of Petitioner Gregory Gadlin.

Rosen Bien Galvan & Grunfeld and Ernest Galvan for Nineteen Social Science and Law Scholars as Amici Curiae on behalf of Petitioner Gregory Gadlin.

Xavier Becerra, Attorney General, James Root and Lance E. Winters, Chief Assistant Attorneys General, Janill L. Richards, Principal Deputy Solicitor General, Phillip J. Lindsay, Assistant Attorney General, Julie A. Malone, Charles Chung and Amanda J. Murray, Deputy Attorneys General, for Respondent The People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Charles Chung
Deputy Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013
(213) 269-6026

Janice M. Bellucci
Law Office of Janice M. Bellucci
1215 K St., 17th Floor
Sacramento, CA 95814
(805) 896-7854