Filed 4/6/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ROBBIE R. VIEHMEYER<br><br>on Habeas Corpus. | G059162<br><br>(Super. Ct. No. 02CF2946)<br><br>O P I N I O N |

Original proceedings; petition for writ of habeas corpus after a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Petition denied.

Sylvia W. Beckham, under appointment by the Court of Appeal; Robbie Viehmeyer, in pro. per. for Petitioner.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Rachael A. Campbell, Deputy Attorneys General, for Respondent.

\*          \*          \*

**INTRODUCTION**

*Overview*

The trial court denied Robbie R. Viehmeyer's petition for writ of habeas corpus.  That petition was based on the contention that Viehmeyer was eligible for early parole consideration under subdivision (a) of section 32 to article I of the California

Constitution (section 32(a)). Viehmeyer then filed a petition for writ of habeas corpus in this court. For the reasons and authorities set forth in this opinion, we deny the petition.

Proposition 57, the Public Safety and Rehabilitation Act of 2016, added section 32 to article I of the California Constitution. Section 32(a) provides that "[a]ny person convicted of a nonviolent felony offense" shall be eligible for early parole consideration "after completing the full term for his or her primary offense." Section 32(a) does not define either "nonviolent" or "violent." Pursuant to subdivision (b) of section 32, the California Department of Corrections and Rehabilitation (CDCR) adopted regulations to implement section 32(a). One of those regulations excludes from early parole consideration any inmate "currently serving a term of incarceration for a 'violent felony'" and then defines violent felony as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code." (Cal. Code Regs., tit. 15, § 3490, subds. (a)(5), (c).)

While being pursued on foot by two police officers, Viehmeyer fired a semiautomatic pistol four times directly at the head of one of the officers. Viehmeyer was convicted of attempted voluntary manslaughter with an enhancement for personal use of a firearm, assault with a firearm on a peace officer with enhancements for personal use and personal discharge of a firearm, possession of a firearm by a felon, and the unlawful taking of a vehicle. For purposes of sentencing, the trial court selected assault with a firearm on a peace officer as the primary offense. Viehmeyer has served the full term for the primary offense, which section 32(a) defines as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement." Viehmeyer remains incarcerated on the sentences imposed on the personal discharge of a firearm enhancement, the counts for possession of a firearm and unlawful taking of a vehicle, and for the sentencing enhancements for prior convictions.

2

*No Eligibility for Early Parole Consideration Where Convictions Are for Nonviolent Primary Offense and Violent Felony*

We hold that where a defendant is convicted of both a violent felony and a nonviolent felony, and the nonviolent felony is the primary offense for purposes of sentencing, the defendant is not entitled to early parole consideration under section 32(a) after completing the full term for the primary offense if he or she is still serving a term for the violent offense.

Both Viehmeyer and the Attorney General contend that the crime of assault with a firearm on a peace officer is a nonviolent felony offense because it is not listed in Penal Code section 667.5, subdivision (c) (section 667.5(c)). By virtue of section 667.5(c)(8), Viehmeyer's conviction for attempted voluntary manslaughter is deemed to be a violent felony offense because he used a firearm during its commission.[1] In addition, section 667.5(c)(22) identifies any violation of Penal Code section 12022.53 as a violent felony. Assault with a firearm on a peace officer, possession of a firearm by a felon, and the unlawful taking of a vehicle are not identified as violent felonies by section 667.5(c).

Viehmeyer argues that, pursuant to section 32(a), he is eligible for early parole consideration and relies on *In re Mohammad* (2019) 42 Cal.App.5th 719, review granted Feb. 19, 2020, S259999 (*Mohammad*), to support that argument. The Attorney General contends that Viehmeyer is not eligible for early parole consideration because of (1) the conviction for attempted voluntary manslaughter, which is a violent felony under section 667.5(c) by virtue of the use of a firearm in its commission, and (2) the personal discharge of a firearm enhancement attendant to the assault conviction.

---

[1] Under section 667.5(c)(8), any felony in which the defendant uses a firearm, and that firearm use has been charged and proved under Penal Code section 12022.3, subdivision (a), 12022.5, or 12022.55, is a violent felony.

3

We agree with the Attorney General, and respectfully disagree with the analysis and holding of *Mohammad* on this point. The text of section 32(a) does not mention violent crimes, and an analysis of the ballot measure and other indicia of the voters' intent convinces us that, in a case where the inmate's current convictions are for violent *and* nonviolent felonies, early parole consideration is not warranted. We therefore conclude that section 3490, subdivision (a)(5) of title 15 of the California Code of Regulations is consistent with section 32(a), and deny Viehmeyer's petition for writ of habeas corpus.

### *Viehmeyer's Assault with a Firearm on a Peace Officer Was a Violent Felony.*

Even if Viehmeyer were correct that an inmate currently serving a sentence for both violent and nonviolent felonies is entitled to early parole consideration under section 32(a), we would still deny his petition because we disagree that section 667.5(c) should be the sole criterion for defining violent and nonviolent felonies for purposes of section 32(a). In *In re Febbo* (2020) 52 Cal.App.5th 1088 (*Febbo*),[2] we concluded that section 667.5(c) did not define "violent felony" for purposes of section 32(a). We hold here that the crime of assault with a firearm on a peace officer, as that crime was committed in this case, is a violent felony for purposes of section 32(a) although assault with a firearm on a peace officer is not listed in section 667.5(c).

### BACKGROUND

The facts regarding Viehmeyer's crimes are drawn from our unpublished opinion *People v. Viehmeyer* (Apr. 8, 2005, G033447):

---

[2] The California Supreme Court granted review in *Febbo* and held the case pending *In re Gadlin* (2020) 10 Cal.5th 915 (*Gadlin*). After the court issued its opinion in *Gadlin*, review in *Febbo* was dismissed, meaning the opinion as originally published became final. (Cal. Rules of Court, rule 8.528(b).) In supplemental briefing in the present case, the Attorney General noted he "does not dispute the broad principles of law" set forth in *Febbo*.

4

"On November 7, 2002, Santa Ana Police Officers William Sweet and Robert Ayres saw Viehmeyer, who was driving a 1983 Chevrolet Monte Carlo, make an illegal U-turn. While Viehmeyer was making the U-turn, the car stalled in the curb lane. A private citizen got out of his own car and helped push defendant's car out of the traffic lanes. Officer Sweet then pulled his patrol car up behind defendant's car and began pushing defendant's car with the patrol car. As the officers were pushing defendant's car toward a gas station, they were informed over the police radio that the car defendant was driving had been reported stolen. The officers decided to wait for additional police units to arrive before attempting to arrest defendant.

"When the officers stopped pushing defendant's car, defendant 'immediately' opened his driver's side door and got out of the car. Officers Sweet and Ayres exited the patrol car; Officer Sweet drew his gun and ordered defendant to get back in the car. Defendant told the officers he had run out of gas, looked back at Officer Sweet, and reached into the car. Defendant then turned around and ran across the street and into the parking lot of a nearby strip mall. Both officers began chasing defendant, yelling, 'stop, police.'

"Defendant turned around, pulled a gun from his waistband, reached over his shoulder, and fired two rounds from a .380-caliber semiautomatic pistol directly at Officer Sweet's head. At the time, defendant was approximately 70 feet away from the officers. They returned defendant's fire. Defendant fired two more shots at Officer Sweet's head. Defendant's gun then jammed, and he threw it to the ground and raised his hands.

"Defendant was arrested. Eight .380-caliber bullets were found in a coin purse he was carrying. A pipe used for smoking methamphetamine was found in defendant's jacket.

"Defendant testified that while being arrested in 1999 pursuant to a search warrant, he had been beaten by the police and severely bitten by a police dog. Defendant

testified he ran from Officers Sweet and Ayres because he was 'scared,' and 'because I don't trust police officers, for one thing, for what they did to me in the past. I thought for sure, if they find this [gun] on me, they know I've got a lawsuit going against them [for the injuries suffered during the 1999 arrest], they were just going to beat me up again and laugh at me.' Defendant had been abusing methamphetamine for 10 months before the incident. Defendant testified he shot in the direction of the officers with the intent to scare them and get them to stop chasing him, but he did not intend to kill them." (*People v. Viehmeyer, supra*, G033447.)

Viehmeyer was convicted by a jury of attempted voluntary manslaughter (Pen. Code, §§ 192, subd. (a), 664, subd. (a) [count 1]), assault with a firearm on a peace officer (*id.*, § 245, subd. (d)(1) [count 2]), possession of a firearm by a felon (*id.*, former § 12021, subd. (a)(1) [count 3]),[3] and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a) [count 4]). The jury found true the sentencing enhancement allegations that Viehmeyer had personally used a firearm in the commission of counts 1 and 2 (Pen. Code, § 12022.5, subd. (a)), and personally discharged a firearm in the commission of count 2 (*id.*, § 12022.53, subds. (a), (c)). The trial court found true the allegations that Viehmeyer had served two prior prison terms. (*Id.*, § 667.5, subd. (b).)

The trial court sentenced Viehmeyer to a determinate term of 31 years four months. The court selected count 2 as the principal term and imposed the upper term of eight years, plus a 20-year enhancement for personally discharging a firearm in the commission of the crime. The court imposed the upper term of five years six months for

---

[3] Penal Code former section 12021, subdivision (a)(1), which was in effect at the time Viehmeyer's offenses occurred, provided: "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6, or who is addicted to the use of any narcotic drug, who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."

6

count 1 and 10 years for the personal use of a firearm sentencing enhancement but stayed execution of this sentence, pursuant to Penal Code section 654.  The court also imposed consecutive subordinate terms of eight months for counts 3 and 4, and two one-year enhancements for the prior prison terms.  Viehmeyer has served more than 17 years on his prison sentence.

Viehmeyer challenged his convictions and his sentence in a direct appeal.  In an unpublished opinion, a panel of this court affirmed the judgment.  (*People v. Viehmeyer, supra*, G033447.)

## PROCEDURAL HISTORY

Viehmeyer requested a parole suitability hearing pursuant to Proposition 57 and *Mohammad, supra*, 42 Cal.App.5th 719.  The CDCR denied Viehmeyer's request.

In April 2020, Viehmeyer filed a petition in the trial court for writ of habeas corpus.  The petition was denied.

Viehmeyer then filed a petition for writ of habeas corpus in this court.  We issued an order to show cause.  The Attorney General filed a formal written return, and Viehmeyer filed a traverse.

At this court's invitation, the parties filed supplemental letter briefs addressing:  (1) the recently decided Supreme Court case *Gadlin, supra*, 10 Cal.5th 915, and (2) whether Viehmeyer's conviction for assault with a firearm on a peace officer is a nonviolent felony for purposes of early parole consideration under section 32(a).

## DISCUSSION

### I.

### Constitutional and Regulatory Framework

In November 2016, the California electorate approved Proposition 57, the Public Safety and Rehabilitation Act of 2016, which added section 32 to article I of the

7

California Constitution: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law:  [¶] (1) Parole Consideration:  Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense.  [¶] (A) For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence.  [¶] (2) Credit Earning:  The Department of Corrections and Rehabilitation shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements.  [¶] (b) The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety."  (Cal. Const., art. I, § 32.)  Section 32(a) does not define the term nonviolent felony offense; indeed, it does not define "violent" or "nonviolent."

Pursuant to section 32, subdivision (b) of article I of the California Constitution, the CDCR adopted regulations addressing parole considerations for nonviolent offenders.  (Cal. Code Regs., tit. 15, §§ 3490-3497.)  (This opinion will address only the parole considerations for determinately sentenced nonviolent offenders.)  As relevant to this opinion, these regulations include the following:

"(a) An inmate is a 'determinately-sentenced nonviolent offender' if the inmate was sentenced to a determinate term and none of the following are true: [¶] . . . [¶]  (5) The inmate is currently serving a term of incarceration for a 'violent felony;' [¶] . . . [¶]  (c) 'Violent felony' is a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code.  [¶]  (d) 'Primary offense' means the single crime for which any sentencing court imposed the longest term of imprisonment,

8

excluding all enhancements, alternative sentences, and consecutive sentences." (Cal. Code Regs., tit. 15, § 3490, subds. (a)(5), (c), (d).)

## II.

### Standard of Review

The standard of review and the principles of regulatory interpretation have recently been set forth by the California Supreme Court in *Gadlin, supra*, 10 Cal.5th at pages 926-927. The first step in our evaluation is determining whether the regulation is """"consistent and not in conflict with""" the provision authorizing it. (*Id.* at p. 926.) Next, we consider whether the regulation is "reasonably necessary" to accomplish the purpose of the provision authorizing it. (*Ibid.*) We presume that a regulation promulgated by a state agency is valid, and the party challenging the regulation bears the burden of proving its invalidity. (*Ibid.*) Our review is limited in scope, so as not to interfere with the regulatory agency's rulemaking discretion. (*Ibid.*)

We consider only whether the regulation is legal, not whether it is a good idea. (*Gadlin, supra*, 10 Cal.5th at p. 926.) If the regulation alters or amends the provision authorizing it, or enlarges or impairs its scope, it is illegal. (*Ibid.*)

Here, we consider whether section 3490, subdivisions (a)(5), (c), and (d) of title 15 of the California Code of Regulations is consistent with section 32(a). To do this, we interpret section 32(a) with a primary focus on giving effect to the voters' intent in enacting that constitutional provision. (*Gadlin, supra*, 10 Cal.5th at pp. 926-927.) We do so by looking first to the language of section 32(a) itself, and then to extrinsic sources— in this case, the ballot materials. (*Gadlin, supra*, 10 Cal.5th at p. 927.)

9

## III.

### Section 32(a) Does Not Permit Early Parole Consideration for Those Serving Terms for Both Violent and Nonviolent Felonies.

#### A.

*The Language of Section 32(a)*

In relevant part, the language of section 32(a) provides: "Any person convicted of *a nonviolent felony offense* . . . shall be eligible for parole consideration after completing . . . the longest term of imprisonment imposed by the court *for any offense*." (Italics added.) The constitutional language does not necessarily appear to be limited to those convicted *only* of a nonviolent felony offense, and the reference to a term of imprisonment "for any offense" could indicate that it applies to those convicted of at least one other offense, which may be violent or nonviolent.

This is the analysis that was applied in *Mohammad, supra,* 42 Cal.App.5th 719, which addressed the same issue we face here with a similar fact pattern. The petitioner, Mohammad, pleaded no contest to nine counts of second degree robbery (Pen. Code, § 211), which are violent felonies under section 667.5(c), and six counts of receiving stolen property (*id.*, § 496, subd. (a)), which are not. (*Mohammad, supra*, at pp. 722-723.)[4] The trial court designated one of the nonviolent felony counts for receiving stolen property as Mohammad's principal sentencing term, and ordered the sentences for all remaining counts to run consecutively as subordinate terms. (*Id.* at p. 723.)

Following the adoption of Proposition 57, Mohammad requested an early parole hearing on the ground he had completed the term for his primary offense. (*Mohammad, supra*, at p. 724.) The CDCR denied his request "because he was a 'violent

---

[4] The opinion does not explain how Mohammad committed the crimes. Specifically, the opinion does not mention whether any firearm sentencing enhancements were alleged and proved against Mohammad.

offender and thereby ineligible for the non-violent parole process.'" (*Ibid.*) After Mohammad's petition for writ of habeas corpus was denied by the trial court, he sought similar relief from the appellate court. (*Ibid.*)

The appellate court granted Mohammad's petition on the ground that title 15, section 3490, subdivision (a)(5) of the Code of Regulations was inconsistent with section 32(a). (*Mohammad, supra*, at pp. 725, 726-729.) "Section 32(a) grants eligibility for early parole consideration to '[a]ny person convicted of a nonviolent felony offense . . . after completing the full term for his or her primary offense,' and the use of the singular 'a' in a sentence that expressly contemplates criminals would be sent to prison for more than one offense means any nonviolent felony offense component of a sentence will suffice. Mohammad was convicted of a nonviolent offense, among others, and he has completed the full term of his primary offense. That means he is now entitled to early parole consideration notwithstanding CDCR's regulatory exclusion to the contrary—which we shall invalidate." (*Mohammad, supra*, at p. 725.)

The *Mohammad* court reached its conclusion by focusing on the singular form of the term "a nonviolent felony offense." As the court explained: "Section 32(a)(1) makes early parole hearings available to '[a]ny person convicted of a nonviolent felony offense' upon completion of 'the full term for his or her primary offense.' The phrase 'a nonviolent felony offense' takes the singular form, which indicates it applies to an inmate so long as he or she commits 'a' single nonviolent felony offense—even if that offense is not his or her only offense. This interpretation is reinforced by the term 'primary offense,' which demonstrates the provision assumes an inmate might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses." (*Mohammad, supra*, 42 Cal.App.5th at p. 726.)

We respectfully disagree with our colleagues in the Second Appellate District, and reject the conclusion that section 32(a) authorizes early parole consideration for an inmate who has suffered both violent and nonviolent felony offenses. We do not

11

read section 32(a) as permitting early parole consideration for inmates who were convicted of crimes that are violent felonies simply because the inmate was also convicted of and has completed the term for a nonviolent felony primary offense. Such a reading is contrary to a main purpose of section 32(a), namely to "enhance public safety." Our conclusion is especially true because section 32(a) does not define violent or nonviolent felonies. Therefore, considering only the language of section 32(a), we conclude an inmate who is serving terms for both violent and nonviolent felonies is not automatically entitled to early parole consideration under section 32(a) after completing the full term for the primary nonviolent offense.

B.

*Ballot Materials*

The Proposition 57 ballot materials support our conclusion. The question is whether the ballot materials indicate the voters intended to allow inmates convicted of one or more violent felonies to be eligible for early parole consideration based on a single conviction for a nonviolent felony (or to allow the CDCR to enact regulations that would do so).

The Voter Information Guide for Proposition 57 provided the following regarding the initiative's purpose and intent: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.) The initiative also states that it "shall be liberally construed to effectuate its purposes." (*Id.*, text of Prop. 57, § 9, p. 146.)

The summary of Proposition 57 focuses on *nonviolent* felony offenders. The ballot materials informed voters that the initiative would "[a]llow[] parole consideration *for nonviolent felons*." (Voter Information Guide, Gen. Elec., *supra*, Quick-Reference Guide, summary of Prop. 57, p. 11, italics added.) The ballot materials

12

go on to state: "A YES vote on this measure means: *Certain state prison inmates convicted of nonviolent felony offenses would be considered for release earlier than otherwise*." (*Id.*, Quick-Reference Guide, What Your Vote Means, p. 11, italics added.) The official title and summary section of the ballot materials, prepared by the Attorney General, notes that the initiative "[a]llows parole consideration *for persons convicted of nonviolent felonies*, upon completion of prison term for their primary offense as defined." (*Id.*, Official Title and Summary of Prop. 57, p. 54, italics added.)

The analysis of Proposition 57 prepared by the Legislative Analyst provides, with respect to the background of the initiative: "Individuals in prison have been convicted of a main or primary offense. *They often serve additional time due to other, lesser crimes for which they are convicted at the same time*. In addition, state law includes various sentencing enhancements that can increase the amount of time individuals serve. For example, those previously convicted of a serious or violent offense generally must serve twice the term for any new felony offense. [¶] . . . Individuals who receive a determinate sentence do not need a parole consideration hearing to be released from prison at the end of their sentence. However, some of these individuals currently are eligible for parole consideration hearings before they have served their entire sentence. For example, certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." (Voter Information Guide, Gen. Elec., *supra*, Analysis of Prop. 57 by Legis. Analyst, p. 54, italics added.)

Finally, with respect to the changes that would be enacted by Proposition 57, the Legislative Analyst explained: "The measure changes the State Constitution to make individuals who are convicted of 'nonviolent felony' offenses eligible for parole consideration after serving the full prison term for their primary offense. As a result, [the Board of Parole Hearings] would decide whether to release

13

these individuals before they have served any additional time related to other crimes or sentencing enhancements. [¶] The measure requires CDCR to adopt regulations to implement these changes. Although the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent. As of September 2015, there were about 30,000 individuals in state prison who would be affected by the parole consideration provisions of the measure. In addition, about 7,500 of the individuals admitted to state prison each year would be eligible for parole consideration under the measure. *Individuals who would be affected by the above changes currently serve about two years in prison before being considered for parole and/or released*. Under the measure, we estimate that these individuals would serve around one and one-half years in prison before being considered for parole and/or released." (Voter Information Guide, Gen. Elec., *supra*, Analysis of Prop. 57 by Legis. Analyst, p. 56, italics added.)

In addition to the foregoing, the Attorney General notes that voters were specifically promised "[v]iolent criminals as defined in Penal Code 667.5(c) are excluded from parole." (Voter Information Guide, *supra*, Rebuttal to Argument Against Prop. 57, p. 59.) Voters were also told the measure would keep "dangerous criminals behind bars," and "the most dangerous offenders locked up" (*id.*, argument in favor of Prop. 57, p. 58), and would not "authorize parole for violent offenders" (*id.*, Rebuttal to Argument Against Prop. 57, p. 59).

The inescapable conclusion from the portions of ballot materials cited here is that, in approving Proposition 57, the voters intended to enact a mechanism for providing early parole consideration only to nonviolent felons, and not to violent felons who by happenstance were also convicted of a nonviolent felony, even if the nonviolent felony is designated by the trial court as the felon's primary offense, and the felon has served the full term of that primary offense.

14

In *Gadlin*, the Supreme Court concluded that the ballot materials did not support the Attorney General's argument that prior convictions for sex offenses requiring registration barred early parole consideration under section 32(a).  (*Gadlin, supra*, 10 Cal.5th at pp. 939-940.)  "The opponents of the initiative pointed out that 'career criminals' would be treated the same as first-time offenders under the initiative, and that inmates 'previously convicted of murder and rape' would be eligible for early release.  [Citation.]  The opponents' argument was thus clear:  *An inmate's prior convictions, regardless of their number or nature, would not be a disqualifying factor for nonviolent parole consideration purposes*.  That the voters approved Proposition 57 'despite these warnings' supports a conclusion that the voters intended to provide broad parole consideration for nonviolent offenders without regard for prior convictions."  (*Ibid.*, italics added.)

In the present case, by contrast, we are considering whether the inmate's *current* convictions for violent felonies are a disqualifying factor for nonviolent parole consideration.  This was not an issue directly raised by the opponents of Proposition 57, and cannot be said to have been rejected by the voters.

The result proposed by Viehmeyer, employing the reasoning of *Mohammad*, would create an anomaly that could not have been envisioned by the electorate.  If an inmate were convicted of at least one inarguably violent felony for which consecutive sentences were imposed, but had also been convicted of a single nonviolent felony, should he or she be eligible for early parole consideration after the completion of the term on the primary offense?  The answer to this question must be no.

For purposes of our analysis, the goals of Proposition 57 are twofold:  protecting public safety while decreasing the prison population.  (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 2, p. 141.)  Nothing in section 32(a) or the legislative history of Proposition 57 indicates the electorate intended to solve the problem of prison overcrowding by granting early parole consideration to every inmate, no matter

15

the number or severity of his or her current violent offenses, if he or she had also been convicted of a nonviolent felony offense. Viehmeyer's convictions for nonviolent felonies should not entitle him to early parole consideration when he was also convicted of attempted voluntary manslaughter by means of the personal use of a firearm, and where the assault with a firearm on a peace officer was accomplished by personally discharging a firearm four times directly at the officer's head.

We conclude that section 3490, subdivision (a)(5), title 15, of the California Code of Regulations is consistent with section 32(a), and passes constitutional muster. The CDCR did not err by denying early parole consideration to Viehmeyer.

**IV.**

**Viehmeyer's Conviction for Assault with a Firearm on a Peace Officer Is Not Necessarily a Nonviolent Offense Pursuant to Section 32(a).**

Even if we were to conclude that section 32(a) authorizes early parole consideration for inmates convicted of both violent and nonviolent felonies, we would nevertheless deny Viehmeyer's petition for writ of habeas corpus because, based on the facts underlying Viehmeyer's convictions, his assault with a firearm on a peace officer was a violent felony.

The arguments of both Viehmeyer and the Attorney General assume that Viehmeyer's conviction for assault with a firearm on a peace officer is a nonviolent felony offense for purposes of section 32(a) because it is not listed as a violent felony in section 667.5(c). As this court concluded in *Febbo, supra*, 52 Cal.App.5th 1088, the CDCR's use of section 667.5(c) to determine what is a nonviolent offense for purposes of section 32(a) may not be consistent with the intent of that constitutional provision.

"Section 32(a)(1) leaves the term 'nonviolent felony offense' undefined and does not refer to any other constitutional or statutory provision to supply a definition. [Citation.] The CDCR was delegated authority to adopt regulations (§ 32(b)) to 'flesh

16

out the relevant constitutional term—"nonviolent felony offense."'" (*Febbo, supra*, 52 Cal.App.5th at p. 1100.) "The plain meaning of the term nonviolent felony offense is an offense that is a felony and is not violent in nature. The CDCR regulations do not provide a general definition for the word violent but instead define nonviolent felony offense by reference to the offenses identified in section 667.5(c) . . . . Thus, Title 15, section 3490(c) defines the term 'nonviolent felony offense' under section 32(a)(1) by defining "'[v]iolent felony'" as a crime or enhancement defined in section 667.5(c). Section 667.5(c) does not provide a general definition of violent, but identifies the specific offenses deemed to be violent felonies." (*Ibid.*, fn. omitted.) "By its terms, section 667.5(c) is not an all-purpose list of violent felonies for use in every aspect of California law. Instead, section 667.5(c) expressly states it is identifying violent felonies only '[f]or the purpose of this section,' and the purpose of section 667.5 is only to impose a sentence enhancement for the specified offenses." (*Id.* at p. 1101.)

In *Febbo, supra*, 52 Cal.App.5th at page 1093, the petitioner was denied early parole consideration because he had been convicted of indecent exposure, a sexual offense requiring registration. The CDCR's regulations provided, in relevant part: "[A]n inmate is not eligible for parole consideration . . . if any of the following apply: [¶] . . . [¶] (3) The inmate is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act." (Cal. Code Regs., tit. 15, § 3491, subd. (b)(3).)[5]

This court invalidated the CDCR's regulations to the extent they would deny early parole consideration to inmates based only on the inmate's current or prior conviction for indecent exposure because indecent exposure is a nonviolent felony offense for purposes of section 32(a). (*Febbo, supra*, 52 Cal.App.5th at p. 1093.) We noted that section 667.5(c) does not purport to identify every felony that is violent in

---

[5] The California Supreme Court has since held this regulation was inconsistent with section 32(a). (*Gadlin, supra,* 10 Cal.5th at p. 943.)

17

nature, and therefore cannot be the sole basis for determining whether or not an inmate is eligible for early parole consideration under section 32(a). (*Febbo, supra*, at pp. 1093, 1101.) "There are many decidedly violent felonies, such as rape of a drugged person (Pen. Code, § 289, subd. (e)), sex trafficking (Pen. Code, § 236.1), and hostage taking (Pen. Code, § 210.5), that are not among the violent felonies listed in section 667.5(c)." (*Id.* at p. 1101.) Here, we add that assault with a firearm on a peace officer may be a violent felony despite not being listed in section 667.5(c); based on the record in this case, we find this is very much a violent felony.

In *Gadlin,* the California Supreme Court declined to address the issue of whether the CDCR's use of section 667.5(c)'s list of violent felonies is consistent with section 32(a)'s stated intention to provide early parole consideration for those convicted of a nonviolent felony offense. (*Gadlin, supra*, 10 Cal.5th at p. 920, fn. 3.) "[T]he Department's regulations implementing Proposition 57 adopt the definition of 'violent felony' established in [section 667.5(c)]. [Citation.] Petitioner's current conviction for assault with a deadly weapon is not a violent felony under that statute. The parties do not discuss, and we do not consider, the validity of the Department's regulations concerning the adoption of the Penal Code on this point." (*Ibid.*)

Viehmeyer committed a felony offense—assault with a firearm on a peace officer—that is not listed as a violent felony in section 667.5(c), and which the parties therefore have assumed is a nonviolent felony offense for purposes of section 32(a). But the crime of assault with a firearm on a peace officer can be, and usually is, committed in a violent manner; indeed, the opinion affirming Viehmeyer's convictions states that Viehmeyer fired a total of four shots from a semiautomatic pistol "directly at Officer Sweet's head." (*People v. Viehmeyer, supra*, G033447.) Moreover, the trial court stayed a term of imprisonment on attempted voluntary manslaughter committed by the personal use of a firearm—which the parties agree is a violent felony—based on Penal Code

18

section 654. (*Ibid.*) From this we may reasonably infer that in this case, Viehmeyer committed the offense of assault with a firearm on a peace officer in a violent manner.

Further, section 667.5(c) specifically provides that "[a]ny violation of Section 12022.53" is a violent felony. Here, a violation of section 12022.53, subdivision (c), was pled and proved, and a 20-year sentencing enhancement was imposed, all in direct connection with the crime of assault with a firearm on a peace officer.

We hold that whether a felony offense is nonviolent for purposes of section 32(a) requires consideration of whether the crime was actually violent or nonviolent. Simply referring to a statute that identifies certain crimes as violent for other purposes is not sufficient to pass constitutional muster and, in this case, fails to carry out the will of the voters.

In *Febbo, supra,* 52 Cal.App.5th at pages 1101 to 1102, we discussed the definitions of the terms violence and violent felony that would make the CDCR's guidelines consistent with section 32(a):

"The terms nonviolent felony offense and violent felony, though undefined by section 32(a)(1), have been defined in various sources and have commonly understood meanings. A survey of the crimes identified in section 667.5(c) as violent felonies shows they all, with maybe one exception, involve killing, physical force, infliction of physical injury, coercion, rape, sexual assault or abuse, destruction of property, fear, duress, or threats. Federal law defines the term 'crime of violence' as '(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or [¶] (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' [Citation.] Violence has been defined in case law as denoting '"the unjust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage, or fury"' [citation], and violent has been

19

defined as "characterized by extreme force . . . marked by abnormally sudden physical activity and intensity" [citation]. [¶] These definitions share common elements: Violence or a violent crime involves physical force, sexual contact, physical injury or destruction of property, fear, coercion, or duress."

Assault with a firearm on a peace officer, as it occurred in this case—or an attempted battery as characterized by Viehmeyer in supplemental briefing—qualifies as a violent felony under these considerations. The assault in this case encompasses "attempt." Lest there be any doubt, an attempt to commit a violent crime done in a violent manner is a not a nonviolent felony offense under section 32(a).

## DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

FYBEL, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

20