Filed 6/21/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ISRAEL ONTIVEROS on Habeas Corpus. | D077905<br><br>(San Diego Super. Ct. Nos. SCD264642, SCD263128, and HC24134) |

ORIGINAL PROCEEDING in habeas corpus. Steven E. Stone, Judge. Petition denied.

Israel Ontiveros, in pro. per., and Ava R. Stralla, under appointment of the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Gregory J. Marcot, Deputy Attorneys General, for Respondent.

In 2017, Israel Ontiveros was convicted of multiple felonies and sentenced to state prison in two criminal cases. In the first case, a jury convicted Ontiveros on two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) with gang enhancements (*id*., § 186.22, subd. (b)(1)). Ontiveros apparently admitted suffering a prior serious felony conviction (*id*., § 667, subd. (a)(1)), a "strike" prior (*id*., § 667, subd. (d)), and a prison prior (*id*., § 667.5, subd. (b)). The trial court sentenced Ontiveros to an effective prison term of 19 years 8 months. In the second case, Ontiveros

pleaded guilty to one count of robbery (*id.*, § 211), and again he apparently admitted a prior serious felony conviction (*id.*, § 667, subd. (a)(1)). The court sentenced Ontiveros to a term of seven years in prison, to run consecutively with Ontiveros's sentence in the first case.

Two years later, Ontiveros requested early parole consideration under Proposition 57, the Public Safety and Rehabilitation Act of 2016. Proposition 57 amended the California Constitution to provide, in relevant part, that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1); section 32(a)(1).) The California Department of Corrections and Rehabilitation (CDCR) denied his request. The trial court likewise denied his petition for writ of habeas corpus. The court reasoned that, because one of Ontiveros's convictions was for a violent felony (robbery), he was ineligible for early parole consideration under Proposition 57.

Ontiveros petitioned this court for habeas relief. He relied primarily on *In re Mohammad* (2019) 42 Cal.App.5th 719, 726 (*Mohammad*), review granted February 19, 2020, S259999. Ontiveros's propria persona petition requested judicial notice of that opinion. We deny his request as unnecessary because published opinions may simply be cited as authority. (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 817-818.)

*Mohammad* held that an inmate is eligible for early nonviolent offender parole consideration under Proposition 57 as long as *any* of the inmate's current convictions is for a nonviolent offense, even if he was convicted of other, violent offenses. (*Mohammad, supra*, 42 Cal.App.5th at p. 726, review granted.) It explained, "Proposition 57 is in no way ambiguous: under [its provisions], an inmate who is serving an aggregate sentence for more than

2

one conviction will be eligible for an early parole hearing if one of those convictions was for 'a' nonviolent felony offense." (*Ibid.*) We issued an order to show cause why Ontiveros was not entitled to relief.

In response, the Attorney General argued that *Mohammad*'s interpretation of Proposition 57 is inconsistent with the intent of the voters and leads to an absurd result. He relied on two recent opinions disagreeing with *Mohammad*. (See *In re Viehmeyer* (2021) 62 Cal.App.5th 973 (*Viehmeyer*); *In re Douglas* (2021) 62 Cal.App.5th 726 (*Douglas*).)

We join *Viehmeyer* and *Douglas* in disagreeing with *Mohammad*'s conclusion that an inmate serving a determinate sentence for both violent and nonviolent convictions is entitled to early parole consideration under Proposition 57. Even accepting *Mohammad*'s position that the language of Proposition 57 unambiguously applies to such inmates, such application would lead to the absurd result that an inmate convicted of a violent offense and several nonviolent offenses would be entitled to *earlier* parole consideration than an inmate convicted of only the violent offense. A policy that rewards inmates for additional convictions is plainly unreasonable. Under established principles of statutory construction, we are not bound to follow the literal interpretation of the text if it would lead to such an absurd and unreasonable result that could not have been intended. We therefore conclude Ontiveros is not entitled to early parole consideration under Proposition 57 and deny his petition.

## DISCUSSION

Proposition 57 was approved by the voters in 2016. (See generally *In re Gadlin* (2020) 10 Cal.5th 915, 922-923 (*Gadlin*).) As noted, it amended the California Constitution to provide that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole

3

consideration after completing the full term for his or her primary offense." (§ 32(a)(1).) The "full term for the primary offense" was defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (§ 32(a)(1)(A).)

The proposition directed CDCR to "adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety." (§ 32(b).) As relevant here, the CDCR's regulations exclude an inmate from early parole consideration if he "is currently serving a term of incarceration for a 'violent felony.' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5).) The regulations define a violent felony as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code." (Cal. Code Regs., tit. 15, § 3490, subd. (c).) The CDCR and the trial court relied on these regulations to deny Ontiveros relief, since his current prison term is based in part on a conviction for robbery, which is a violent felony under Penal Code section 667.5, subdivision (c)(9). (See *In re Reeves* (2005) 35 Cal.4th 765, 772, 773 [explaining that "multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' "].)

The standard for reviewing CDCR's regulations is well-settled: "In evaluating the validity of a regulation . . . , we first ask whether the regulation is ' "consistent and not in conflict with" ' the provision that authorizes it. [Citation.] We then inquire whether the regulation is reasonably necessary to effectuate the purpose of the authorizing law. [Citations.] Our task as a reviewing court ' " 'is to decide whether the [agency] reasonably interpreted [its] mandate.' " ' [Citation.] We presume

4

the validity of a regulation promulgated by a state agency. [Citation.] The burden lies with the party challenging the regulation to show its invalidity. [Citation.] 'Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise.' [Citation.] [¶] ' "Our function is to inquire into the legality of the regulations, not their wisdom." ' [Citation.] Still, ' " 'final responsibility for the interpretation of the law rests with the courts.' [Citations.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to[,] strike down such regulations." ' " (*Gadlin, supra*, 10 Cal.5th at p. 926.)

"To determine whether the regulation here is consistent with the constitutional provisions enacted by Proposition 57, we must interpret the constitutional provisions themselves. Our 'primary concern' in construing a constitutional provision enacted through voter initiative is 'giving effect to the intended purpose of the provisions at issue.' [Citation.] And, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.' " (*Gadlin, supra*, 10 Cal.5th at pp. 926-927.)

" 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but

5

rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.] We must also consider 'the object to be achieved and the evil to be prevented by the legislation. [Citations.]' [Citation.] These guiding principles apply equally to the interpretation of voter initiatives." (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276; accord, *Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 (*Arias*).)

*Mohammad* examined the language of Proposition 57 and found it clear and unambiguous: "Section 32(a)(1) makes early parole hearings available to '[a]ny person convicted of a nonviolent felony offense' upon completion of 'the full term of his or her primary offense.' The phrase 'a nonviolent felony offense' takes the singular form, which indicates it applies to an inmate so long as he or she commits 'a' single nonviolent felony offense—even if that offense is not his or her only offense. This interpretation is reinforced by the term 'primary offense,' which demonstrates the provision assumes an inmate might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses." (*Mohammad, supra*, 42 Cal.App.5th at p. 726, review granted.)

The court continued, "Section 32(a)(1) extends early parole consideration to persons 'convicted of a nonviolent felony *offense*.' (Italics added.) Under section 32(a)(1)(A), an inmate who is 'convicted of a nonviolent felony offense' not only remains eligible if he or she is sentenced to a consecutive sentence, but in fact, becomes eligible for an early parole hearing *prior* to serving that consecutive sentence. There is just no escaping the conclusion that the text Proposition 57 added to the Constitution obviously contemplates inmates would be sent to prison for more than one criminal offense and would qualify for early parole consideration if one of

6

those offenses was a nonviolent offense." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 727, review granted.)

*Mohammad* recognized, however, that its conclusion was open to question. "It cannot be, the argument goes, that voters intended a defendant who is convicted of more crimes, i.e., both violent and nonviolent felonies, to be eligible for early parole consideration while a defendant convicted of fewer crimes, i.e., the same violent felony but no nonviolent felonies, is not." (*Mohammad*, *supra*, 42 Cal.App.5th at p. 727, review granted.) *Mohammad* did not explore this line of thinking, in part because the Attorney General apparently had not raised it. *Mohammad* held, "The Constitution's text compels the result we reach, and we are not prepared to declare that result so absurd [citation] as to disregard the Constitution's plain meaning—and, indeed, the Attorney General does not ask us to." (*Id.* at p. 728.)

*Mohammad* further recognized that its rationale "bespeaks a certain self-aware naivete" about the knowledge of the voting public. (*Mohammad*, *supra*, 42 Cal.App.5th at p. 728, review granted.) This language appears to acknowledge the likelihood that *Mohammad*'s literal interpretation of Proposition 57 diverges from the policy voters believed they were enacting. In the court's view, however, failing to adopt a literal interpretation would "invite confusion and manipulation of the initiative process." (*Ibid.*) If the voters intended something different than the text itself, they were free to amend the Constitution again. (*Ibid.*)

We accept, for purposes of our opinion, that the text of Proposition 57 is clear and unambiguous, as *Mohammad* held, and a literal reading would include Ontiveros. He is a "person convicted of a nonviolent felony offense and sentenced to state prison" and therefore "eligible for parole consideration after completing the full term for his or her primary offense." (See § 32(a)(1).)

7

But we disagree that any reasonable person could have intended such a result. Its absurdity is clear even without considering the specific context of Proposition 57. Our society abhors crime and seeks to deter and punish it. We do not reward it. It, indeed, "*cannot be* . . . that voters intended a defendant who is convicted of more crimes, i.e., both violent and nonviolent felonies, to be eligible for early parole consideration while a defendant convicted of fewer crimes, i.e., the same violent felony but no nonviolent felonies, is not." (See *Mohammad*, *supra*, 42 Cal.App.5th at p. 727, review granted, italics added.) This result is so absurd and unreasonable that the electorate could not have intended it.

*Douglas* similarly concluded that *Mohammad*'s literal interpretation of Proposition 57 would lead to an absurd result the voters did not intend. (*Douglas*, *supra*, 62 Cal.App.5th at p. 731.) It explained, "Here is but one example of an absurd result. The literal language of section 32(a)(1) suggests that an inmate convicted of 10 violent felonies and one nonviolent felony would be eligible for early parole consideration after serving the full term of his or her primary offense, whatever that primary offense might be. But an inmate convicted of the same 10 violent felonies without a nonviolent felony conviction would be ineligible for early parole consideration under section 32(a)(1). Such a result would encourage and reward a violent felon's commission of at least one additional nonviolent felony, would be inconsistent with sound public policy, and would make no sense." (*Id*. at p. 732; see *Viehmeyer*, *supra*, 62 Cal.App.5th at p. 987.) We agree.

A literal interpretation of Proposition 57 likewise specifically conflicts with one of its main purposes. The proposition states that its provisions were enacted to "enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order[.]" (§ 32(a).) As *Viehmeyer*

8

recognized, a literal interpretation " 'is contrary to a main purpose of section 32(a), namely to 'enhance public safety.' " (*Viehmeyer*, *supra*, 62 Cal.App.5th at p. 985.)

Moreover, "[i]n determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters." (*Arias*, *supra*, 46 Cal.4th at p. 979.) The ballot summary explains, in relevant part, that Proposition 57 "[a]llows parole consideration for persons convicted of nonviolent felonies, upon completion of [the] prison term for their primary offense, as defined" and it "[r]equires [CDCR] to adopt regulations to implement new parole and sentence credit provisions and certify they enhance public safety." This concern for public safety reinforces Proposition 57's explicit purposes, and it confirms the voters did not intend to overturn the fundamental principle that an inmate should not be rewarded for committing additional crimes.

The analysis by the Legislative Analyst noted that parole consideration hearings are normally provided to inmates serving an indeterminate term. The analysis explained, "Individuals who receive a determinate sentence do not need a parole consideration hearing to be released from prison at the end of their sentence. However, some of these individuals currently are eligible for parole consideration hearings before they have served their entire sentence. For example, certain individuals who have not been convicted of violent felonies are currently eligible for parole consideration after they have served half of their prison sentence. This was one of several measures put in place by a federal court to reduce the state's prison population." It described the amendments here under the heading "*Parole Consideration for Nonviolent Offenders.*" It stated, "The measure changes the State Constitution to make individuals who are convicted of 'nonviolent felony'

9

offenses eligible for parole consideration after serving the full prison term for their primary offense." To the extent this analysis sheds light on the issue here, it supports the proposition that "*Nonviolent Offenders*" are entitled to parole consideration, excluding by implication inmates who were convicted of a violent offense.

Indeed, in their rebuttal argument, the proponents of Proposition 57 made this idea explicit. They maintained that the proposition "[d]oes NOT authorize parole for violent offenders. The California Supreme Court clearly stated that parole eligibility under [Proposition] 57 applies, '*only to prisoners convicted of non-violent felonies.*' [Citation.] Violent criminals as defined in Penal Code [section] 667.5[, subdivision ](c) are excluded from parole."

"These arguments indicate that a person convicted of one or more violent felony offenses would not be eligible for early parole consideration, even if the person was also convicted of a nonviolent felony offense." (*Douglas*, *supra*, 62 Cal.App.5th at p. 733.) Similarly, as *Viehmeyer* noted, "The inescapable conclusion from the portions of ballot materials cited here is that, in approving Proposition 57, the voters intended to enact a mechanism for providing early parole consideration only to nonviolent felons, and not to violent felons who by happenstance were also convicted of a nonviolent felony . . . ." (*Viehmeyer, supra*, 62 Cal.App.5th at p. 987.)

Ontiveros claims the proponents' arguments "merely beg the question whether Proposition 57 treated mixed-offenders whose primary offense was nonviolent as included in or excluded from its program for early parole consideration." We disagree. The proponents' arguments do not merely beg the question. They answer it: "Violent criminals as defined in Penal Code 667.5[, subdivision ](c) are *excluded* from parole." (Italics added.)

10

Ontiveros also claims that a literal reading of Proposition 57 is not absurd. He argues "there is nothing unreasonable in the electorate's focus on the nonviolent nature of a prisoner's *primary* offense in fashioning a program for early parole consideration to reduce the prison population." *Douglas* considered and rejected an identical argument: "Douglas suggests that if section 32(a)(1) were interpreted to apply only to an inmate whose *primary* offense was a nonviolent felony, it would not lead to absurd results. He claims there is 'nothing unreasonable in the electorate's focus on the nonviolent nature of a prisoner's primary offense in fashioning a program for early parole consideration to reduce the prison population.' But Douglas's view does not find support in the language of section 32(a)(1) or in the election materials. Section 32(a)(1) does not require the primary offense to be a nonviolent felony conviction. And the election materials indicate that a person with a violent felony conviction is not eligible for early parole consideration. In any event, Douglas's proposed interpretation does not alleviate the concern that a person with many violent felony convictions could be rewarded for committing at least one additional nonviolent felony, as long as the sentencing judge designates the nonviolent felony as the primary offense." (*Douglas, supra*, 62 Cal.App.5th at pp. 733-734; see *Viehmeyer, supra*, 62 Cal.App.5th at p. 987.) Again, we agree with *Douglas*.

In sum, the literal interpretation of Proposition 57 articulated in *Mohammad* and adopted by Ontiveros would lead to absurd results the voters did not intend. Ontiveros's contention that we should invalidate CDCR's implementing regulations based on that interpretation is therefore unpersuasive. He has not shown the CDCR erred by excluding him from early parole consideration under Proposition 57 or that he is otherwise entitled to relief.

11

## DISPOSITION

The petition is denied.

GUERRERO, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.