Filed 6/17/24  P. v. Tribble CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KEITH LAMONT TRIBBLE,<br><br>Defendant and Appellant. | F087145<br><br>(Super. Ct. No. 1407523)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*    Before Poochigian, Acting P. J., Detjen, J. and Peña, J.

**INTRODUCTION**

Appellant Keith Lamont Tribble (appellant) was convicted of multiple offenses with two prior strike convictions and a prior prison term enhancement, and sentenced to 50 years to life plus one year. In 2022, the Department of Corrections and Rehabilitation (CDCR) advised the trial court to recall appellant's sentence to determine whether it should strike the prior prison term enhancement. In 2023, the court ordered the one-year enhancement term stricken and reimposed the same sentence of 50 years to life for the substantive offenses.

On appeal from that ruling, appellant's counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant filed a letter raising one issue. We review the record and affirm the trial court's order.

**FACTS[1]**

"On August 27, 2009, H.C. was working as a housekeeper at a motel in Modesto. The outer door to the room in which she was working was open while she cleaned the bedroom and bathroom. While bent over cleaning the bathtub, she sensed that someone was standing behind her. She straightened up, turned around, and saw the appellant. She did not hear appellant enter the room because the bathtub water had been running. H.C. did not know appellant and asked what he wanted. Appellant did not answer. She became scared, raised her hands, and screamed. Appellant grabbed her by the neck, lifted her up by one hand, and pushed her against a wall. Appellant used his other hand to cover her mouth. H.C. thought that appellant was going to strangle her. She resisted and ripped the front of his shirt. She got away from appellant and tried to flee, but appellant pulled her by the hair and threw [her] onto one of the beds in the motel room.

---

[1]     The following facts are from this court's nonpublished opinion in appellant's direct appeal, *People v. Tribble* (Mar. 29, 2012, F062302) (*Tribble*), which appellant filed as an exhibit in support of his motion for resentencing.

2.

"H.C. said she 'fell face forward' on the bed and ended up 'facing upwards.' Appellant straddled her, hit her in the face, and ripped her bra. She continued to scream and appellant repeatedly said, '[S]hut up.' H.C. used her right knee to move appellant to his side and made an unsuccessful attempt to reach the front door. When she broke away from appellant, he grabbed her by the hair a second time and threw her on the other bed. H.C. bounced off the bed and fell face down on the floor. Appellant straddled H.C. a second time, reached under her blouse, and touched her breast. He then moved his hips back and forth on her hips. At the same time, appellant used a lighter to ignite a glass tube pipe. H.C. pulled on appellant's finger until she heard a 'pop.' He got up and ran out of the motel room. H.C. reported the incident to the motel manager.

"H.C. sustained bruises to her face and neck and scratches on her back, side, and upper chest. She estimated the attack lasted about 10 minutes. Modesto Police Officer Mark Phillips responded to the area near the motel to look for a suspect. A community service officer informed Phillips that a suspect matching appellant's description had been seen less than a mile from the motel. Officer Phillips drove to that area and saw appellant running down an alley. As Phillips approached appellant, he saw that an undercover detective had detained appellant and was taking him into custody. Phillips said appellant's pants and boxer shorts were down around his ankles at the time of apprehension. Modesto Police Detective Sean Dodge contacted appellant later that day. Detective Dodge testified that appellant had recent injuries to his knuckles and scratches on his arms. From the window of an ambulance, H.C. later identified appellant as the man who attacked her." (*Tribble*, *supra*, F062302.)

"Appellant did not offer any documentary or testimonial evidence on his behalf but chose to rely on the state of the prosecution evidence." (*Tribble*, *supra*, F062302.)

## PROCEDURAL BACKGROUND

On March 9, 2010, an information was filed in the Superior Court of Stanislaus County charging appellant with count I, assault likely to produce great bodily injury (Pen. Code,[2] § 245, subd. (a)(1)); count II, sexual battery on a restrained person (§ 243.4, subd. (a)), and stating that conviction of the offense would require appellant to register as a sex offender pursuant to section 290; count III, felony false imprisonment by violence, menace, fraud, and deceit (§ 236); and count IV, second degree burglary (§ 459), with two prior strike convictions (§ 667, subd. (d)) for commission of lewd and lascivious acts with a child under the age of 14 years in 1983 and 1988 (§ 288, subd. (a)), and one prior prison term enhancement (§ 667.5, subd. (b)).

### Convictions and Sentence

On January 13, 2011, appellant was convicted after a jury trial of counts I, II, and III, and found not guilty of count IV. The trial court found true the special allegations that he had two prior strike convictions and one prior prison term enhancement.

On March 29, 2011, the trial court denied appellant's request to dismiss the two prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and made the following findings.[3]

> "I've considered the paperwork and the motions filed in this case, and the fact that the defendant has three—this would be with his three sex-related crimes, two of which were strikes, this was not a strike. I'm going to deny the *Romero* motion to strike the strikes on the following grounds:

> "His first strike was in 1983, then he had another conviction in 1984, 1986, and 1989. He was convicted of two other felonies receiving local time in both of those cases.

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

[3] Appellant filed the reporter's transcript from his sentencing hearing as an exhibit in support of his motion for resentencing.

"[In] 1992, [appellant] was sentenced to the state prison.

"[In] 1994, he had two misdemeanor convictions, had three parole violations in 1994, one in 1996. [In] 1997 he was sentenced to the state prison for 16 months. [He] [h]ad a parole violation in 1998.

"[In] 1998[,] he received two years state prison on a registration case, [which] appeared to be concurrent with a three-year state prison on a new sex strike offense, and then he had two parole violations in 2001.

"In 2003, he was committed as a sexually violent predator for two years.

"And [in] 2008[,] [appellant] was before this court and received an offer from the prosecution to give him 16 months state prison for a [section] 290.

"And whenever I take a plea and strike strikes, I inform the defendant that the strikes are gone for this case and this case only, and that they would come back if a new felony offense occurs. And in spite of that, [appellant] had two parole violation[s] in 2009 after his release. And what's the most troubling to the Court is that [appellant] was out three days from the state prison and was on electronic monitoring when this crime occurred. And based on those issues, the Court is denying the strike.

"[Appellant] obviously has not learned his lesson. This woman was trying to do her job and is obviously very traumatized by what happened."

The trial court found appellant was "a serious danger to society," he had numerous prior convictions and parole violations, and he was on parole when he committed the offenses. The court found consecutive sentences were appropriate because appellant engaged in separate acts of violence. The court sentenced appellant to two consecutive third strike terms of 25 years to life for counts I and II, a concurrent term for count III, and a consecutive one-year term for the prior prison term enhancement.

On direct appeal, this court ordered the concurrent term for count III stayed pursuant to section 654, and affirmed the judgment as modified. (*Tribble*, *supra*, F062302.) An amended abstract of judgment was subsequently filed.

## RECALL AND RESENTENCING

In or about June 2022, CDCR filed a document with the trial court that identified appellant as a person in custody serving a sentence for an enhancement that had been "repealed by Senate Bill [No.] 180 [(2017–2018 Reg. Sess.) (Senate Bill 180)] and/or Senate Bill [No.] 136 [(2019–2020 Reg. Sess.) (Senate Bill 136)]."

On March 29, 2023, and May 8, 2023, appellant filed sentencing briefs and argued that the one-year term imposed for the section 667.5, subdivision (b) prior prison term enhancement was invalid as a result of subsequently enacted legislation, and had to be stricken. Appellant also requested the trial court dismiss his two prior strike convictions and resentence him to a determinate term based on his background, drug use, and the age of the prior strike convictions. Appellant submitted supporting exhibits consisting of documents about his good behavior, educational achievements, and counseling while in prison.

## The Prosecution's Opposition

On August 18, 2023, and November 6, 2023, the prosecution filed opposition to appellant's request to be resentenced. The prosecution agreed the trial court must dismiss the section 667.5, subdivision (b) prior prison term enhancement based on subsequently enacted legislation. The prosecution also agreed the court had discretion to resentence appellant. However, the prosecution argued the court should not dismiss the prior strike convictions or reduce appellant's sentence because he was a danger to public safety. In support of this argument, the prosecution cited the facts of the underlying offenses, that appellant committed the offenses after being released from prison three days earlier, and he later claimed he was on his way to register as a sex offender when he attacked the victim.

The prosecution attached documentary exhibits in support of the arguments about appellant's lengthy criminal record, including his prior convictions for committing lewd and lascivious acts on his stepbrother's daughter in 1982, and then committing the same

offenses on a minor under the age of 14 years in 1987. In 1998 and 2008, appellant was convicted for failing to register as a sex offender. In 2003, he was found to be a sexually violent predator and committed to Atascadero State Hospital for two years. He had numerous parole violations and was returned to prison in 1994, 1996, 1998, 2001, and 2009.

The prosecution also submitted documents to undermine appellant's account of his behavior in prison, and argued the records showed that he repeatedly violated prison rules and committed several offenses while in custody from 2012 to 2019.

Finally, the prosecution submitted the transcript of appellant's hearing before the Board of Parole Hearings in 2022 (the Board). The Board denied parole and found appellant was an unreasonable risk to public safety based on his prior convictions for sexual and violent offenses, poor performance on parole and supervised release, his institutional history of violence and non-compliance in prison, and an assessment that he was at high risk to reoffend.

**The Trial Court's Order**

On September 6, 2023, the trial court convened a hearing on CDCR's notice for recall and resentencing. The parties agreed the court had to dismiss the prior prison term enhancement. As to appellant's request for resentencing on his convictions, the court said it had reviewed the parties' briefs but not the supporting exhibits, and continued the matter to conduct such a review.

On November 6, 2023, the trial court dismissed the prior prison term enhancement. The court stated it had reviewed the parties' motions and supporting exhibits, and denied appellant's motion to dismiss the prior strike convictions.

> "Upon a careful review of the record in this matter, the Court does decline the invitation to strike the strike priors. At the outside it is noted that the sentencing Court was also asked to provide the same relief, and it also declined to do so.

7.

"The facts as stated in the Court of Appeals unpublished opinion [from appellant's direct appeal] set forth the compelling reasons for the trial court's denial, and those facts remain unchanged today. The nature of the assault combined with lengthy criminal history set forth in the opinion are … immutable factors for consideration in that they are not going to change.

"Among those factors [that] would weigh heavily upon the Court's decision is the fact that this crime occurred within days of being released on parole for [his] prison sentence. It is also not lost on this Court that [appellant] avoided a 25-year-to-life sentence once before when he accepted a plea bargain for 16 years [in an earlier case].

"The Court also considered additional evidence by the defense that shows [appellant] has recently engaged in programming [in prison] and is making commendable efforts to address the causes of his antisocial criminal behavior. The letters provided to the Court show that [appellant] is beginning to accept accountability for th[ese] actions and to understand the triggers and warning signs and also to formulate a plan for his rehabilitation.

"[Appellant] also points out the age of his prior convictions, which received [*sic*] in the rear view with each passing year of his sentence. The [prosecution] have also provided evidence addressing the severity of the committing offense and also note that [appellant's] disciplinary record while in prison has been imperfect.

"The [prosecution] also note that the [Board] recently denied his release and knew that [appellant] would present a danger to the community. Considering all these facts and circumstances presented, the Court [declines] at this time to exercise its authority under Section 1385. The nature of this committing offense, criminal history and a demonstrated inability to curb impulsive criminal behavior within days of being released from prison the last time [does] cause great concern, but striking his convictions would not be in furtherance of justice."

The trial court recalled appellant's sentence and resentenced him to two consecutive terms of 25 years to life for counts I and II, stayed the term imposed for count III, and dismissed the prior prison term enhancement.

On November 7, 2023, appellant filed a timely notice of appeal.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes counsel's declaration indicating that appellant was advised he could file his own brief with this court. We address an issue appellant raised in a letter brief.

### Senate Bills 136 and 483

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. [Citation.] Effective January 1, 2020, [Senate Bill 136] amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses. [Citations.] Enhancements based on prior prison terms served for other offenses became legally invalid. [Citation.] The amendment was to be applied retroactively to all cases not yet final on January 1, 2020." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379–380 (*Burgess*).)

"Later, in 2021, the Legislature enacted [Senate Bill 483]. This bill sought to make the changes implemented by Senate Bill 136 retroactive. [Citation.] It took effect on January 1, 2022, and added former section 1171.1, now section 1172.75 ...." (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.)

Section 1172.75 establishes a mechanism to provide affected defendants a remedy for those legally invalid enhancements, and the resentencing process begins with corrections officials. (*People v. Cota* (2023) 97 Cal.App.5th 318, 330.) "Subdivision (b) … directs the Secretary of [CDCR] and the correctional administrator of each county to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and … provide the name of each person … to the sentencing court that imposed the enhancement.' " (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.) "After the trial court receives from the CDCR and county correctional administrator the information included in subdivision (b) [of the statute], 'the

court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a),' and if so, 'recall the sentence and resentence the defendant.' " (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.)

**The Trial Court's Ruling**

In response to CDCR's letter, the trial court correctly ordered the section 667.5, subdivision (b) enhancement stricken. The court also acknowledged it could resentence appellant on the substantive offenses. (See, e.g., *People v. Monroe* (2022) 85 Cal.App.5th 393, 395–396; cf. *People v. Superior Court (Guevara)* (2023) 97 Cal.App.5th 978, 983, rev. granted. Mar. 12, 2024, S283305.) As set forth above, the court made lengthy findings when it denied appellant's motion to dismiss the prior strike convictions, and it did not abuse its discretion.

***Gadlin***

In his letter to this court, appellant asserts his convictions were "reduce[d]" to "non-violent" offenses and he was eligible under "Prop 51 [*sic*]" and "the Gadding [*sic*] ruling for three strikes non-violence [*sic*] parole board consideration."

It appears appellant is referring to Proposition 57 and *In re Gadlin* (2020) 10 Cal.5th 915. Proposition 57 was approved in 2016, and amended the California Constitution to provide "that '[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. [Citation.] The initiative also directed [CDCR] to 'adopt regulations in furtherance of these provisions' and instructed the Secretary of [CDCR] to 'certify that these regulations protect and enhance public safety.' " (*Gadlin*, at p. 919.) In response, CDCR adopted regulations that "exclude[d] from nonviolent offender parole consideration any inmate who 'is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act ....' " (*Ibid.*)

*Gadlin* held these exclusionary regulations were inconsistent with the terms of Proposition 57 and directed CDCR to repeal the provisions. (*In re Gadlin*, *supra*, 10 Cal.5th at pp. 920, 943.) "Whether an inmate is suitable for parole depends in part on that individual's prior criminal history and the nature of his or her current offense. Thus, the [Board] may consider an inmate's prior or current sex offense convictions when evaluating the inmate's suitability for parole. [Citations.] [CDCR's] regulations, however, treat all individuals with convictions for registerable sex offenses as categorically ineligible for parole, even when [CDCR's] own regulations classify those inmates as having been convicted of a nonviolent felony. In doing so, [CDCR] denies even the mere possibility of parole to an entire category of 'person[s] convicted of a nonviolent felony offense.' [Citation.] This precondition to parole consideration is inconsistent with the Constitution as amended by Proposition 57." (*Id*. at pp. 942–943.)

We question whether this issue is cognizable on appeal from the trial court's ruling upon recall of appellant's sentence. In any event, appellant's claim that he is entitled to a parole board hearing under *Gadlin* and Proposition 57 raises a moot point. Appellant received and attended a parole board hearing in 2022, and the hearing transcript was filed as a supporting exhibit with his motion for resentencing. At that hearing, the presiding commissioner advised appellant that his original eligibility for a parole date had been "significantly out in the future," but there had been "a change in the law" that made him currently eligible for parole. At the conclusion of the lengthy hearing, the Board denied parole and found appellant posed an unreasonable risk to public safety based on his current dangerousness. The Board scheduled his next parole hearing for 2025.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The trial court's order of November 6, 2023, is affirmed.